In the Interest of B.N.L.-B., a child.

No. 05–09–00960–CV.

Court of Appeals of Texas,
Dallas.

July 11, 2012.

Michelle May O'Neil, Ashley Bowline Russell, O'Neil & Attorneys, Dallas, TX, for Appellant.

Jeremy C. Martin, Malouf & Nockels, LLP, Dallas, TX, for Appellee.

Before Justices MOSELEY, MARTIN RICHTER, and MYERS.

## OPINION

Opinion by Justice MOSELEY.

Appellant Mark Aguirre appeals from a trial court's judgment in a suit affecting the parent-child relationship (SAPCR) between Aguirre, appellee Colleen Logan, and Logan's former partner, Deborah Bloom. Although the underlying litigation related to custody of B.N.L.-B., a child, the substance of the custody proceedings is not at issue in this appeal. The only issues before us involve the trial court's

rulings relating to attorney's fees.[1]

The trial court's judgment awarded attorney's fees to Logan and denied Aguirre's own request for attorney's fees. For the reasons set forth below, we affirm the trial court's order that Logan recover attorney's fees from Aguirre and Aguirre not recover fees from Logan. However, we reverse the order as to the amount of fees awarded. We remand this case to the trial court for further proceedings on the attorney's fees issue. In all other respects, the trial court's Order in SAPCR is affirmed.

## I. BACKGROUND

Logan, Bloom, and Aguirre entered into two agreements relevant to this appeal: the Donor Insemination Agreement (Donor Agreement) and the Agreement Regarding Visits between Mark Aguirre and [B.N.L.-B.], which was entered by a court in a Consent Order.

### A. The agreements

In the Donor Agreement, Aguirre agreed to be a sperm donor for the artificial insemination of Bloom. Aguirre further agreed he would not seek a legal relationship with the child who would be conceived.

Paragraph 9 of the Donor Agreement stated:

> Understanding that [Bloom and Logan] are proceeding with the artificial insemination procedure based upon [Aguirre]'s representations that he will

not seek to establish a legal relationship with the Child(ren) except under the conditions set forth herein, if [Bloom and Logan] honor all the promises and commitments made herein, and further provided that no third party seeks on behalf of the Child(ren) to hold [Aguirre] legally and or financially responsible for the Child(ren), *but [Aguirre] seeks to establish a legal relationship with the Child(ren) anyway, [Aguirre] shall indemnify and hold [Bloom and Logan] harmless for all costs incurred in defending against such action, including, but not limited to, all costs, attorneys fees, . . ., and all other costs whatsoever incurred by [Logan] and/or [Bloom] in defending such suit, . . . .*"

(Emphasis added.)

Bloom successfully conceived a child using Aguirre's donation and Logan adopted the child, B.N.L.-B. After B.N.L.-B.'s birth, Logan, Bloom, and the child moved to Virginia. Aguirre, Logan, and Bloom then entered into a second agreement—the Agreement Regarding Visits between Mark Aguirre and [B.N.L.-B.]—which set forth a visitation schedule between Aguirre and B.N.L.-B. A Virginia court incorporated the visitation agreement into a "Consent Order."[2] Paragraph 10 of the Consent Order provides: "The parties agree that any costs, including but not limited to counsel fees, . . ., incurred by a party in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement through litigation or to

---

1. After this case was submitted, Logan filed a bankruptcy petition, and this appeal was abated. Logan subsequently notified the Court she received a discharge and her bankruptcy case was closed. Logan moved to reinstate the appeal; her motion was granted. The Court then ordered the parties to file supplemental briefing regarding the effect, if any, of the bankruptcy on this appeal. After review-

ing the parties' additional filings, we conclude the bankruptcy did not moot any issues in this appeal nor deprive the Court of jurisdiction.

2. All references to the Consent Order include the parties' agreements reflected in the Agreement Regarding Visits between Mark Aguirre and [B.N.L.-B.].

enforce compliance herewith shall be borne by the breaching party."

## B. The litigation

Bloom, Logan, and B.N.L.-B. subsequently moved to Dallas. One month after their move, Aguirre filed in Dallas a Notice of Registration of Foreign Child Custody Determination and a Petition for Clarification of Prior Order for Possession or Access in Suit Affecting the Parent–Child Relationship. In his petition, Aguirre requested the court to construe and clarify the terms of the Consent Order, which the Texas court did. In its "Temporary Orders," the trial court ordered registration of the Consent Order and ordered a place for exchange of B.N.L.-B. for Aguirre's visits permitted by the Consent Order.

Aguirre then filed his First Amended Petition for Enforcement of Order by Contempt against Logan, alleging Logan failed to abide by the terms of the Temporary Orders on six occasions. Aguirre requested the Court fine Logan and find her in contempt, order her to reimburse Aguirre for his travel expenses and attorney's fees, and order her to surrender B.N.L.-B. for make-up periods. The record does not reflect any of this requested relief was granted.

Subsequently, Bloom and Logan separated and Bloom filed an Original Petition in a suit affecting the parent-child relationship (SAPCR) and Logan filed a counter-petition. A few months later, Aguirre intervened in the SAPCR, filing an Original Petition in Intervention and seeking a conservatorship. He then filed his First Amended Petition seeking, among other things, attorney's fees "[f]or services rendered in connection with the protection, the conservatorship, and support of the child, . . . ."

Logan filed a counter-petition to Aguirre's intervention, seeking appointment as sole managing conservator and arguing Aguirre lacked standing as a non-parent to request any form of conservatorship.[3] Logan also asserted she was entitled to indemnification from Aguirre and was entitled to recover attorney's fees from him pursuant to the Donor Agreement, which she attached as an exhibit. Logan argued she complied with all the requirements of the agreement and was entitled to indemnification without regard to whether she was successful in defending the action in which Aguirre sought to establish a legal relationship with B.N.L.-B.

Aguirre opposed Logan's request for indemnification, arguing the Donor Agreement was superseded by the Consent Order. He asserted the Consent Order "acts as a complete novation and agreed rescission" of the Donor Agreement. Aguirre reiterated his request that the trial court order Logan to pay his reasonable attorney's fees.

## C. Trial court's rulings

Bloom, Logan, and Aguirre reached a settlement relating to all issues except attorney's fees; they agreed the trial court would resolve the attorney's fees issue by written submission. The parties subsequently submitted briefs and evidence supporting their requests for attorney's fees.

The trial court's final Order in SAPCR appointed Bloom and Logan as joint managing conservators, noted Aguirre's right

---

3. Logan also filed a plea to the jurisdiction challenging Aguirre's standing to intervene in the SAPCR. Aguirre moved to strike her plea. Following a hearing, the trial court granted the plea, concluding Aguirre lacked standing to seek conservatorship, but he had standing to intervene under family code section 102.004(b) as a "person with substantial past contact with [B.N.L.-B.]." The plea to the jurisdiction is not an issue in this appeal.

to "possession of and access to" B.N.L.-B. as a result of the parties' settlement agreement, and ordered Aguirre to pay Logan $62,200.86 in attorney's fees. The order stated that all relief requested and not expressly granted was denied.

The trial court made three Findings of Fact pertinent to this appeal:

10[.] Colleen Logan incurred reasonable and necessary attorney's fees in defending the lawsuit(s) filed by Mark Aguirre in the amount of $62,200.86[.]

11[.] Mark Aguirre has a duty pursuant to the Donor Agreement to indemnify Colleen Logan for all costs, including reasonable and necessary attorney's fees, in defending the lawsuit(s) filed by Mr[.] Aguirre[.]

12[.] Colleen Logan is awarded a judgment against Mark Aguirre in the amount of $62,200.86 to accrue interest in the annual rate of 6%, from the date this judgment is signed until paid[.]

The trial court's Conclusion of Law number five provided Logan "is awarded a judgment against Mark Aguirre in the amount of $62,200.86...." Although Aguirre requested additional findings of fact, the trial court did not file any.

Aguirre filed a motion for new trial challenging the sufficiency of the evidence supporting the trial court's finding that Logan's attorney's fees were reasonable and necessary and challenging the amount of fees awarded to Logan. Aguirre also argued the trial court erred by failing to find the Donor Agreement had not been "rescinded" or "modified" by the Consent Order. The motion for new trial was overruled by operation of law. This appeal followed.

## II. LOGAN'S RECOVERY OF ATTORNEY'S FEES FROM AGUIRRE

Logan argued, and the trial court found, the Donor Agreement required Aguirre to indemnify her for her attorney's fees. In his first issue, Aguirre challenges the trial court's failure to find novation of the Donor Agreement because, he argues, the Consent Order modified the Donor Agreement and Logan waived the indemnity provision of the Donor Agreement. In his second, third, and fifth issues, Aguirre challenges the trial court's construction of the Donor Agreement. In his fourth issue, Aguirre contends the evidence was legally insufficient to support the trial court's Findings of Fact that the fees awarded to Logan were reasonable and necessary.

### A. Consent Order Did Not Novate the Donor Agreement

In his first issue, Aguirre argues the trial court erred in awarding Logan attorney's fees pursuant to the Donor Agreement because the Consent Order constituted a novation of the Donor Agreement concerning B.N.L.-B. and attorney's fees.

#### 1. Applicable Law

A novation is a substitution of a new agreement in place of an existing agreement between the same parties. It is an affirmative defense to a claim for breach of contract. *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.-Dallas 2003, no pet.). In the absence of express agreement, whether a new contract operates as a novation generally is a question of fact. *Id.* (quoting *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 424 (1953)). A party raising the defense of novation must prove: (1) a previous valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Fulcrum Cent.*, 102 S.W.3d at 277.

The substitution of a new agreement occurs when a later agreement is so

inconsistent with a former agreement that the two cannot subsist together. *Id.* In the absence of inconsistent provisions, "a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first." *Id.* (quoting *Chastain,* 257 S.W.2d at 424). It must clearly appear the parties intended a novation; a novation is never presumed. *Fulcrum Cent.,* 102 S.W.3d at 277.

### 2. Discussion

■ The only evidence concerning novation consists of the provisions of the Donor Agreement and the Consent Order. The parties agree the Donor Agreement and Consent Order are valid agreements and they agreed to a new contract, which was adopted by the Virginia court in the Consent Order. The disputed issue is whether the Consent Order extinguished the Donor Agreement. *See id.*

The Consent Order is not so inconsistent with the Donor Agreement that they cannot exist together: the Donor Agreement concerned issues leading up to the birth of B.N.L.-B., and the Consent Order concerned Aguirre's visits with and access to the child after he was born. The only apparent inconsistency between the Donor Agreement and the Consent Order was their treatment of Aguirre's visitation with and access to B.N.L.-B. When read together, the terms of the Donor Agreement and Consent Order are not inconsistent: in the Donor Agreement, Aguirre promised not to "demand, request, or compel . . . visitation rights" with respect to a child not yet in existence. While the Consent Order acknowledged past visits between Aguirre and B.N.L.-B. and sets forth a plan to continue those visits with Bloom and Logan's agreement, the Consent Order does not bestow any rights on Aguirre to "de-mand, request, or compel . . . visitation rights." Rather, the Consent Order continues to recognize that "Aguirre agrees that he does not have standing and will not seek custody" of B.N.L.-B.

Aguirre relies on one paragraph in the Consent Order to support his argument: "This Agreement contains the entire understanding of the parties, and there are no provisions, warranties, covenants or undertakings of, by or between the parties other than those expressly set forth herein. No modification or waiver of any of the terms of this Agreement by the parties shall be valid unless made in writing, and signed by the parties." However, we understand this provision to mean the Consent Order is the parties' entire agreement as to the issues relating to Aguirre's access to and visitation with B.N.L.-B.—not the parties' entire understanding regarding their relationship. The "entire understanding" provision evidences the parties' intent to extinguish the Donor Agreement only as it related to visitation and access between Aguirre and B.N.L.-B. *See TX. C.C., Inc. v. Wilson/Barnes Gen. Contractors, Inc.;* 233 S.W.3d 562, 567 (Tex.App.-Dallas 2007, pet. denied) ("When reviewing the court's interpretation of a contract, we give words in the contract their plain meaning and examine the entire contract in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless."). We reject Aguirre's argument that this provision of the Consent Order is evidence of an express agreement by the parties to discharge and bar the Donor Agreement in its entirety. *See Fulcrum Cent.,* 102 S.W.3d at 277.

Having examined the record for evidence supporting the trial court's implied finding that the parties did not intend for the Consent Order to constitute a novation

of the Donor Agreement, we conclude the evidence established this implied finding.

## B. Consent Order Did Not Modify the Donor Agreement

■ Also in his first issue, Aguirre argues the trial court erred by awarding Logan attorney's fees pursuant to the Donor Agreement because the Consent Order modified the Donor Agreement, thus "expressly subsum[ing] and eliminat[ing] the Donor Agreement in its entirety." On appeal, Aguirre cites the following provision of the Donor Agreement: "All changes made in the terms and conditions of this Agreement shall be made in writing and signed by all parties." Although the Consent Order was in writing and signed by all parties, thus meeting the Donor Agreement's requirements for modification, no provision in the Consent Order expressly eliminated the Donor Agreement or precluded the parties from modifying only one provision (such as the provision related to Aguirre's visitation rights), nor do any of the contract terms state that modifying one provision of the Donor Agreement modifies or eliminates all provisions. *See generally TX. C.C., Inc.,* 233 S.W.3d at 567. The Donor Agreement only required modifications to be in writing and signed by all parties—the Consent Order satisfies those requirements. By incorporating the parties' signed agreement addressing Aguirre's visitation rights, the Consent Order modified the Donor Agreement as to visitation and access only. *See, e.g., Arthur J. Gallagher & Co. v. Dieterich,* 270 S.W.3d 695, 702 (Tex.App.-Dallas 2008, no pet.) ("Whether a contract is modified depends on the parties' intentions and is a question of fact."). We conclude the evidence established the Consent Order did not modify the Donor Agreement in its entirety.

## C. Waiver of Indemnity Provision of the Donor Agreement

Finally, Aguirre argues in his first issue that, even if the indemnity provision of the Donor Agreement survived the Consent Order, Logan waived any right to enforce it by agreeing to establish Aguirre's legal relationship with B.N.L.-B. However, Aguirre failed to preserve this argument for appeal because he did not raise it in the trial court. *See* Tex.R.App. P. 33.1.

We overrule Aguirre's first issue.

## D. Construction of the Donor Agreement

In his second, third, and fifth issues, Aguirre challenges the trial court's interpretation and application of the Donor Agreement. He argues Logan was not entitled to collect attorney's fees because she failed to comply with the conditions precedent in the Donor Agreement and because the agreement did not provide for fees relating to Aguirre's claims. He also asserts the Donor Agreement was illusory with respect to Logan and, therefore, Logan could not enforce its terms regarding attorney's fees.

■ Each of these issues presents a matter of contract interpretation. When, as here, the contract is not ambiguous, the construction of the written instrument is a question of law for the court and we review the trial court's legal conclusions de novo. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex. 1999).

### 1. Conditions Precedent to Recovering Attorney's Fees

■ In his second issue, Aguirre argues the trial court improperly concluded Logan was entitled to attorney's fees pursuant to the Donor Agreement because she failed to prove she notified Aguirre that his genetic material had been destroyed

upon successful completion of the insemination procedure. Aguirre contends this notification was a condition precedent to Logan's ability to recover attorney's fees. Although the Donor Agreement did state Logan and Bloom "shall provide [Aguirre] with a written statement from the clinic or facility storing such genetic material evidencing that it has been destroyed," the Donor Agreement also states: "if [Bloom and Logan] honor all promises and commitments made herein ... but [Aguirre] seeks to establish a legal relationship with the Child(ren) anyway, [Aguirre] shall indemnify ... [Logan] ... [for costs incurred by Logan] in defending such suit...." By the plain terms of this provision, Aguirre's indemnity obligation arises on Logan's defense of a suit in which Aguirre seeks a legal relationship—which he did by intervening in the SAPCR and seeking a conservatorship. *See TX. C.C., Inc.*, 233 S.W.3d at 567. Thus, Logan's duty to notify and Aguirre's duty to indemnify are separate and independent. We overrule Aguirre's second issue.

### 2. Donor Agreement's Standard for Indemnity

■■■ In his third issue, Aguirre argues the trial court mis-applied the indemnification provision in the Donor Agreement because the trial court awarded Logan fees incurred in "defending the lawsuit(s) filed by Mark Aguirre." Aguirre asserts the indemnification clause only requires him to pay fees related to Aguirre's attempts to establish a legal relationship with B.N.L.-B. and he does not have to pay fees arising from his efforts to register the Consent Order in Texas, to enforce his visitation rights under the Consent Order, or to clarify the terms of the Consent Order.

Although we disagree that visitation is not a legal relationship, the legal relationship relevant to the indemnity provision is the conservatorship. Paragraph 3 of the Donor Agreement provides that Aguirre "agrees that he will not demand, request, or compel any guardianship, custody, or visitation rights with respect to the Child(ren),...." Paragraph 9 states Aguirre "will not seek to establish a legal relationship with the Child(ren)...." Construing these clauses together, we conclude that by intervening in the SAPCR to seek conservatorship, Aguirre sought a legal relationship with B.N.L.-B. under the terms of the Donor Agreement. *See generally id.* We overrule Aguirre's third issue.

### 3. Donor Agreement is not Illusory as to Logan

■■■ In his fifth issue, Aguirre contends the Donor Agreement is illusory with respect to Logan and, therefore, Logan could not enforce its terms regarding attorney's fees. We disagree. An agreement is illusory when it does not bind the promisor—i.e. the promisor has the option to discontinue his performance. "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex.2010).

Paragraph 2 of the Donor Agreement provides Bloom and Logan "agree that in the event any third party seeks to hold [Aguirre] legally, financially, or emotionally responsible for the Child(ren), they will actively support [Aguirre] in defending against such action,...." Paragraph 8 states that if Bloom, Logan, "and/or any third party acting on behalf of the Child(ren) at any time seeks to hold [Aguirre] financially or legally responsible for supporting the Child(ren) and/or seeks to establish paternity," Logan and Bloom "agree to indemnify [Aguirre]." Further, paragraph 8 provides Bloom and Logan's

obligation under the provisions of paragraph 8 "are joint and several, and may be enforced against either party in full, without the necessity of proceeding against the other party." Paragraph 15 provides: "All terms of this Agreement are ... part of the consideration that each party has required as a basis for entering into this Agreement."

These provisions in the Donor Agreement establish the agreement was not illusory as to Logan because her promises to defend and indemnify Aguirre constituted consideration or mutuality of obligation. *See id.* We overrule Aguirre's fifth issue.

## E. Sufficiency of the Evidence Supporting the Award to Logan

In his fourth issue, Aguirre presents several arguments to show the evidence was legally insufficient to support the trial court's award of attorney's fees to Logan. We reject Aguirre's first argument—that the Donor Agreement was not part of the record from the proceedings involving attorney's fees—because the Donor Agreement was filed as an attachment to Logan's First Amended Counter–Petition to Aguirre's SAPCR and referred to in her Submission to the Court for Attorney's Fees. We reject Aguirre's second argument—that Logan's evidence in support of her request for attorney's fees was not properly authenticated and therefore inadmissible—because Aguirre failed to raise it in the trial court, thus failing to preserve it for review. *See* TEX.R.APP. P. 33.1. We partially overrule Aguirre's fourth issue.

Next, we address Aguirre's arguments that the evidence is legally insufficient to show Logan's attorney's fees were reasonable and necessary and that Logan failed to segregate properly the fees she incurred in the SAPCR involving Aguirre's, Logan's, and Bloom's claims and counterclaims.

### 1. Applicable Law

In Texas, attorney's fees are not recoverable unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex.2006). As a general rule, the party seeking to recover attorney's fees carries the burden of proof. *Garcia v. Gomez,* 319 S.W.3d 638, 646 (Tex.2010). Although courts should consider several factors when awarding attorney's fees, generally a trial court may award fees that are "reasonable and necessary" for the prosecution of the suit. *See generally id.* at 647. An agreement to pay an unspecified amount of attorney's fees implies payment of a reasonable fee for the attorney's services. *Kurtz v. Kurtz,* 158 S.W.3d 12, 18 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (citing *Girard Fire & Marine Ins. Co. v. Koenigsberg,* 65 S.W.2d 783, 785 (Tex.Civ.App.-Dallas 1933, no writ) ("Where the parties do not expressly agree as to the amount, the law raises a promise to pay that which is reasonable.")). Whether attorney's fees are reasonable and necessary are matters of fact, and the amount of a fee award rests in the sound discretion of the trial court. *See RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.,* 348 S.W.3d 444, 452 (Tex. App.-Dallas 2011, no pet.)

Fee claimants are required to segregate fees between claims for which fees are recoverable and claims for which they are not. *Chapa,* 212 S.W.3d at 311. Further, the party seeking to recover attorney's fees always has the burden of proof to show the fees were incurred against the particular defendant sought to be charged. *Id.* at 313. If any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Id.* An award of attorney's fees erro-

neously based upon evidence of unsegregated fees requires a remand. *Id.* at 314.

### 2. Discussion

 Aguirre argues Logan failed to segregate the fees she incurred by defending against his intervention from those incurred by litigating his visitation under the Consent Order and from those incurred by litigating the SAPCR with Bloom, all of which occurred in the same lawsuit. Under the Donor Agreement, Aguirre's conservatorship claim is the claim for which Logan can recover fees. Therefore, Logan was required to segregate the recoverable fees relating to the conservatorship from other unrecoverable fees incurred in this SAPCR. *See id.* at 313–14.

In her Submission to the Court for Attorney's Fees, Logan "request[ed] that Aguirre be ordered to pay Logan's attorney's fees, costs and expenses in the amount of $90,640.22, which is a reasonable and necessary fee for the services provided, which Logan has determined to be the amount of attorney's fees and expenses she incurred as a result of the litigation attributable to Aguirre[.]" To support her request, Logan presented the trial court with (1) Logan's engagement agreement with Thomas P. Goranson's law firm; (2) monthly invoices and "pre-bill worksheets" from Goranson's firm; (3) an unexecuted engagement letter from Keith Griffin to Logan and Bloom; and (4) a "Detail Transaction File List" from Griffin's firm showing payments of $20,845.

The total amount Goranson billed for "professional services" or "fees" from attorneys and legal assistants was $98,311.50. However, five of the eleven months for which he submitted bills were for work pre-dating Aguirre's intervention; many entries on the post-intervention worksheets were redacted and the entries do not distinguish fees related to Aguirre's

intervention from other non-intervention issues in the SAPCR. Additionally, the "Detail Transaction File List" from Griffin does not distinguish between the fees paid separately by Bloom and Logan.

In this appeal, Logan defends the trial court's award of fees to her because the trial court determined $28,439.36 in fees were incurred litigating the SAPCR against Bloom and "delineated" that amount from her request. However, nothing in Logan's submission shows a method of "delineating" or segregating the fees "incurred solely in defending" Aguirre's lawsuit seeking a conservatorship from other issue among these parties. Further, we cannot determine from the record how the trial court reached the amount of its award of $62,220.86. Therefore, we conclude Aguirre met his burden to show there was no evidence of segregation of recoverable from unrecoverable attorney's fees. We reverse the amount of fees awarded to Logan from Aguirre and remand this issue to the trial court for further proceedings. *See id.* at 314. We partially sustain Aguirre's fourth issue.

### III. AGUIRRE'S RECOVERY OF ATTORNEY'S FEES FROM LOGAN

 In his sixth issue, Aguirre argues the trial court improperly denied his request for attorney's fees for his claim that Logan breached the Consent Order. Paragraph 10 of the Consent Order states: "The parties agree that any costs, including but not limited to counsel fees, ..., incurred by a party *in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement through litigation or to enforce compliance herewith shall be borne by the breaching party.*" (Emphasis added.) Additionally, paragraph 19 states:

The parties agree that they will jointly request the Court to incorporate this Agreement into a Consent Order. The parties further agree to enroll/register the Consent Order in the State of Texas or in any other jurisdiction in which the Parents reside with the child for at least six (6) months.

First, Aguirre argues Logan breached paragraph 19 by failing to register the Consent Order within six months of moving to Texas. We cannot agree. Paragraph 19's plain language required Logan or Bloom to register the Consent Order in Texas *after* Bloom, Logan, and B.N.L.-B. resided in Texas *for at least six months. See TX. C.C., Inc.,* 233 S.W.3d at 567. Aguirre filed the Consent Order in Texas one month after Logan, Bloom, and B.N.L.-B. moved to Texas, obviating the need for Logan or Bloom to register the Consent Order after residing in Texas for at least six months. Aguirre argues Logan's objection to his attempt to register the Consent Order constitutes violation of paragraph 19. However, the only evidence in the record as to such objection is the trial court's overruling of "Respondent(s) objection to registration of foreign judgment" in the Temporary Orders. In light of the six-month residency requirement preceding registration, Aguirre has not presented evidence supporting his argument that any objection shows a breach of the Consent Order entitling him to attorney's fees from Logan.

Next, Aguirre argues Logan sought to deny Aguirre his visitation rights with B.N.L.-B., which required him to "initiate his clarification, enforcement, modification, and intervention actions in response." After the Temporary Orders specified the place for exchange of B.N.L.-B., Aguirre filed his First Amended Petition for Enforcement of Order by Contempt Against Logan. In that pleading (verified by trial counsel), Aguirre detailed six instances of Logan's failure to relinquish B.N.L.-B. for Aguirre's visits. However, the record does not support the conclusion that Aguirre *successfully* enforced his First Amended Petition; the trial court did not grant any of his requests in that pleading. The Order in SAPCR addresses only future visitation, which is not the subject of Aguirre's First Amended Petition. Accordingly, Logan's duty to pay attorney's fees pursuant to paragraph 10 of the Consent Order was not triggered. *See id.*

We conclude the evidence supports the trial court's implied finding as a matter of law that Aguirre was not entitled to attorney's fees pursuant to the Consent Order. We overrule Aguirre's sixth issue.

## IV. CONCLUSION

Having resolved Aguirre's six issues, we reverse the amount of attorney's fees awarded to Logan against Aguirre and remand this case to the trial court for further proceedings on this issue consistent with this opinion. In all other respects the Order in SAPCR is affirmed.