**Reversed and Rendered and Opinion Filed July 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01719-CV

**TENET HEALTH SYSTEMS HOSPITALS DALLAS, INC., Appellant**
**V.**
**NORTH TEXAS HOSPITAL PHYSICIANS GROUP, P.A., Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-00717-2009**

## OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice FitzGerald

This appeal follows cross-motions for summary judgment in a post-judgment garnishment action. Tenet Health Systems Hospitals Dallas, Inc. (the "Hospital") named North Texas Physicians Group, P.A. ("New Co.") as garnishee in an application for writ of garnishment seeking to recover on a judgment owed by North Texas Medical Group, P.A. ("MG"). The trial court granted summary judgment in favor of New Co. and entered a final judgment that the Hospital take nothing. In three issues on appeal, the Hospital asserts the trial court erred in denying its motion for summary judgment and granting New Co.'s motion. For the reason that follow, we conclude the trial court's judgment was in error. We reverse the trial court's judgment and render judgment that Tenet Health Systems Hospitals Dallas, Inc. recover $164,024.82 from North Texas Hospital Physicians Group, P.A..

## BACKGROUND

Scott Yates, M.D., is the sole member, officer, and director of MG, the judgment debtor. Effective January 27, 2004, MG owned a leasehold estate as a tenant under a lease (the "Lease"). Initially, Cambridge-Plano Partners MOB IV, L.P. ("Cambridge") was the landlord under the Lease, but effective January 31, 2012, Cambridge sold and assigned its interest under the Lease to HCRI Plano Medical Facility, LLC. ("HCRI") (HCRI or Cambridge, "Landlord"). The leased premises consist of approximately 7,000 square feet of office space located in Plano, Texas (the "Premises"). Yates guaranteed MG's performance under the Lease.

On June 20, 2006, the Hospital obtained a final judgment against MG in the amount of $616,969.89, with costs and post-judgment interest (the "Judgment"). Effective June 1, 2006, twenty days before the Judgment was entered, MG subleased the Premises to New Co. ("the Sublease"). Yates is also the sole member, officer, and director of New Co. The term of the Sublease was the remaining term of the Lease. The amount of rent payable by New Co. as sublessee is equal to the amount of rent payable by MG under the Lease. Yates signed the Sublease as president on behalf of both MG and New Co..

On September 12, 2008, the Hospital filed its application for a writ of garnishment in the 193rd District Court of Dallas County, the same court that issued the Judgment. The application referred to the Hospital's Judgment against MG for $616,969.89, and stated that the Judgment remained unsatisfied. The application further asserted that New Co., the garnishee, was indebted to MG, the judgment debtor, because New Co. owed rent to MG under the Sublease. The writ of garnishment was issued on September 15, 2008, and served on New Co. on September 19, 2008.

New Co. filed an answer on October 13, 2008. The answer included both a general denial and a specific denial which stated, "[New Co.] specifically denies that it owes rents to [MG] or that it has property and effects of [MG], except to the limited extent previously testified to by

–2–

[Yates]." The Hospital specially excepted and filed a traversal of New Co.'s answer.[1] On February 23, 2009, the trial judge signed an agreed order of transfer, and the case was transferred to Collin County.[2]

Following the transfer to Collin County, the Hospital filed a supplement to the application for writ of garnishment and added a request for turnover relief from New Co. The Hospital also filed an amended application for turnover and request for the appointment of a receiver in the 193rd District Court in Dallas County (the "Receivership Action"). The Dallas County court denied the requested relief (the "Dallas County Order").

New Co. moved for a traditional summary judgment and asserted that New Co. was not indebted to MG. New Co.'s argument was premised on the assertion that the Sublease is unenforceable because it was not approved by the Landlord, and it therefore creates no indebtedness from New Co. to MG. New Co. further asserted that the Landlord had a superior right to rent.

The Hospital also moved for a traditional summary judgment. The motion asserted that the summary judgment evidence conclusively established New Co.'s indebtedness to MG on September 19, 2008, the date the writ was served, and the amount of such indebtedness, $164,024.82. In response to New Co.'s motion, the Hospital argued that the Sublease is enforceable as between New Co. and MG and, as a matter of law, created indebtedness owing by New Co. to MG. The Hospital also argued that the Landlord had no right, much less a right superior to the Hospital's, to impound the debt New Co. owes MG.

---

[1] Rule 673 is entitled "May Traverse Answer." TEX. R. CIV. P. 673. Specifically, the rule provides, "if the plaintiff should not be satisfied with the answer of any garnishee, he may controvert the same by his affidavit stating that he has good reason to believe, and does believe, that the answer of garnishee is incorrect, stating in what particular he believes the same to be incorrect …." *Id.*

[2] If a garnishee is not a resident of the county where the original suit is pending and a party controverts the garnishee's answer, the issues raised are to be tried in the county where the garnishee resides. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 63.005 (West 2008).

In response to the Hospital's motion, New Co. re-urged its previous arguments concerning the Sublease, the Lease, and the Landlord's superior right to rent. The response further asserted that the Hospital was collaterally estopped from asserting its garnishment claim.

The Hospital objected to New Co.'s summary judgment evidence. The objections included, *inter alia*, an objection that New Co.'s summary judgment evidence attempted to prove payment, an affirmative defense that had not been pled. The trial court denied the objections in their entirety.

The trial court granted New Co.'s motion for summary judgment and denied the Hospital's motion. The Hospital subsequently non suited its turnover claim. Following the Hospital's motion for new trial and reconsideration of the summary judgment issues, the trial court ultimately entered a final judgment that the Hospital take nothing on its garnishment claim. The Hospital timely perfected this appeal.

## STANDARD OF REVIEW

Both parties moved for a traditional motion for summary judgment. In a traditional motion for summary judgment, the movant carries the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). An appellate court reviews de novo the grant or denial of a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

–4–

## ANALYSIS

The Hospital challenges the trial court's judgment that it take nothing on its garnishment claim. "Garnishment is a statutory proceeding whereby the property, money, or credits of a debtor in the possession of another are applied to the payment of a debt." *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992) (per curiam). The garnishee is a third party who owes a debt to or holds property of the debtor. The plaintiff or garnishor is a creditor of the debtor and requests the court to issue the writ of garnishment to the garnishee. TEX. CIV. PRAC. & REM. CODE ANN. §§ 63.001–.008 (West 2008); TEX. R. CIV. P. 657–79; *Thompson v. Harco Nat'l Ins. Co.*, 997 S.W.2d 607, 611 (Tex. App.—Dallas 1998, pet. denied), *overruled in part on other grounds by John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 741 (Tex. 2001) (per curiam).

"The only real issue in a garnishment action is whether the garnishee is indebted to the judgment debtor, or has in its possession effects belonging to the debtor, at the time of service of the writ on the garnishee, and at the time the garnishee files its answer." *Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 905 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The burden is on the garnishor to establish the amount of the debt owed to the debtor or the value of the property held by the garnishee. *Nat'l City Bank v. Tex. Cap. Bank*, 353 S.W.3d 581, 585 (Tex. App.—Dallas 2011, no pet.). "If the garnishor's proof fails, he can of course recover nothing." *Putman & Putman, Inc. v. Capitol Warehouse, Inc.*, 775 S.W.2d 460, 463 (Tex. App.—Austin 1989, writ denied).

The timing of both service of a writ of garnishment and the garnishee's answer date govern the identity of funds trapped. *See First Nat'l Bank in Dallas v. Banco Longoria*, S.A., 356 S.W.2d 192, 195–96 (Tex. Civ. App.—San Antonio 1962, writ ref'd n.r.e.). Specifically, a writ

–5–

of garnishment impounds funds in the hands of the garnishee at the time the writ is served through the date garnishee is required to answer. *Id.*

The crux of the issue before us is whether New Co., the garnishee, was indebted to MG, the judgment debtor, at the time the writ was served. *See* TEX. R. CIV. P. 668. The Hospital argues the summary judgment in favor of New Co. cannot be upheld on any of the four grounds New Co. presented in the court below. New Co. responds that there was no indebtedness because there was a novation, the Landlord had a superior right to rentals due under the Sublease, and the indebtedness was discharged. New Co. further argues that even if there was an indebtedness, the Hospital is collaterally estopped to pursue the instant case, there is a fact question as to the amount of the debt New Co. was entitled to offset, and the amount of the offset exceeds the amount the Hospital seeks to recover. We begin our inquiry by considering whether the Sublease created an indebtedness from New Co. to MG.

### Did the Sublease Create New Co. Indebtedness to MG?

Underlying the question of whether the Sublease created an indebtedness is the question of the enforceability of the Sublease.[3] In the court below, New Co. argued the Sublease was unenforceable because the parties entered into the agreement without the Landlord's consent. The Hospital asserts the trial court's judgment cannot be affirmed based upon the alleged unenforceability of the Sublease, and we agree.

It is undisputed that the Lease prohibits "any transfer" without the Landlord's consent, and it is also undisputed that the Landlord did not consent to the Sublease. The question is

---

[3] The agreement between New Co. and MG is properly characterized as a sublease rather than an assignment. An assignment conveys the entire term of the lease, leaving no interest or reversionary interest in the grantor. *718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 360 (Tex. App. —Waco 1999, pet. denied). But if the conveying party retains any reversionary interest in the estate, the instrument is construed as a sublease. *Id.* When, as here, the conveying party retains the right to reenter and repossess the property on default of rental payments, the party has retained a contingent reversionary interest, and the instrument is construed as a sublease. *Id.*

whether the absence of such consent renders the Sublease void and forecloses a conclusion that New Co. was obligated to pay rent to MG.

The prohibition against subleasing without a landlord's consent arises by statute and may also be included in the lease itself. *See* TEX. PROP. CODE ANN. § 91.005 (West 2007); *Nelson v. Seidel*, 328 S.W.2d 805, 807 (Tex. Civ. App.—Houston 1959, writ ref'd n.r.e.). It is well-established, however, that this limitation is for the benefit of the landlord, and an assignment of a lease in violation of this limitation "does not invalidate the lease, nor relieve the lessee from the obligations imposed by such lease or the assignee who assumes them." *Nelson,* 328 S.W.2d at 807; *Reynolds v. McCullough*, 739 S.W.2d 424, 432 (Tex. App.—San Antonio 1987, writ denied). As the Amarillo court observed,

> The effect of a sub-leasing of a leased premises, without the consent of the lessor, is to give to the lessor the right to forfeit the lease. It does not have the effect of nullifying the lease ipso facto. The sublease may become valid and binding by either the agreement, acquiescence or ratification of the lessor.

*Edwards v. Worthington*, 118 S.W.2d 328, 333 (Tex. Civ. App.—Amarillo 1938, no writ). Because any objection to a sublease belongs to the landlord, courts have rejected sublessees' attempts to invoke this prohibition to their advantage. One court aptly explained, "[i]t does not lie in the mouths of [sublessees] to make this complaint; they cannot take advantage of their own wrong." *Huffstutler & Howell v. McKenzie*, 163 S.W. 652, 654 (Tex. Civ. App.—Austin 1914, no writ). Applying these principles here, we conclude that New Co. cannot enter into the Sublease, enjoy occupancy of the premises, and then complain that the Sublease is unenforceable. The fact that the Landlord did not consent to the Sublease is of no consequence to our inquiry here. Therefore, having determined that the Sublease is not void, we consider whether the Sublease created an indebtedness from New Co. to MG.

The Sublease was included in the summary judgment evidence. It reflects that New Co., is the sublessee and MG is the sublessor. The Sublease conveys the right to occupy the Premises as well as the right to use the equipment located on the Premises. The Landlord is not a party to the Sublease.

New Co. insists no indebtedness to MG arises under the Sublease because the Sublease does not specify the party entitled to receive New Co.'s rental payment, and New Co. paid its rent to Landlord. But New Co. provides no authority for the proposition that its payments to Landlord somehow nullify its obligation to MG under the Sublease.

The Landlord is not a party to the Sublease and has no rights or obligations under the Sublease. The Sublease is only between New Co. and MG, and evidences no intent to benefit any other parties. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (contract must clearly set forth intention to confer a direct benefit to confer third-party beneficiary status). There is no privity of estate or contract between Landlord and MG. *See Tawes v. Barnes*, 340 S.W.3d 419, 229 (Tex. 2011) (discussing privity of estate as arising from assignment, not sublease); *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (stating no privity between original lessor and sublessee). Thus, the only party to whom New Co. is obligated under the Sublease is MG. Under the terms of the Sublease, New Co. owed rent every month beginning in June 2006. The Sublease provides that "rent shall be calculated in accordance with the underlying Lease." The Sublease also states, "[T]his Sublease and all of the rights of Lessee hereunder shall be subject to and subordinate at all times to the Underlying Lease." Thus, New Co.'s obligation to MG under the Sublease arises in tandem with MG's obligation to the Landlord under the Lease.

In support of its application for writ of garnishment and its motion for summary judgment, the Hospital filed the affidavit of Dennis Barnes, executive vice-president of the

Landlord. Barnes testified that Cambridge was the Landlord under the Lease from January 27, 2004 until January 31, 2012, when it assigned its interest to HCRI. Barnes authenticated business records of Cambridge that were attached to the affidavit, and stated that based on such records:

> [O]n September 19, 2008, rent payable under the Lease was in arrears in the amount of $164,024.82, and no part of that arrearage was accumulated before June 1, 2006; and

> [O]n October 13, 2008, rent payable under the Lease was in arrears in the amount of $163,619.57, and no part of the arrearage was accumulated before June 1, 2006.

Barnes further testified that when the Lease was assigned to HCRI, "the Lease was still in full force and effect, and the term of the Lease was not to terminate until March 31, 2015." The Barnes affidavit was not controverted. In addition, Yates testified in his deposition that rent was in arrears, and MG had not paid rent since 2006.

The evidence demonstrates that the Sublease obligates New Co. to pay the rent that MG owes to Landlord. The Sublease states that, "[l]essee shall at all times comply with the obligations of the Lessor under the underlying Lease."  New Co. argues that it paid rent directly to Landlord as though tactical circumvention somehow eviscerates its obligation to MG. But whether New Co. pays the Sublease rent directly to MG or directly to the Landlord is immaterial in terms of the obligation created under the Sublease; New Co.'s obligation is owed to MG. The obligation is simply defined with reference to MG's obligations under the Lease. Evidence that New Co. paid some rent establishes nothing other than an acknowledgement that rent was due and New Co. was obligated to pay it.

The evidence further demonstrates that an arrearage of $164,024.82 existed under the Lease on September 19, 2008. Because the terms of the Sublease mirror the terms of the Lease, it follows that an identical arrearage existed under the Sublease. Consequently, the summary

–9–

judgment evidence establishes that New Co. was indebted to MG at the time the writ of garnishment was served. The writ of garnishment was broad enough to capture this debt.

### *Was There A Novation?*

According to New Co., a promissory note MG executed in favor of Landlord one month after the execution of the Sublease replaced the indebtedness owed by MG with a new form of indebtedness. New Co. asserts the Landlord accepted the note as a new promise of performance in lieu of MG's prior obligation under the Lease. Therefore, New Co. argues that only the new obligation could be enforced. New Co. contends "to the extent the note constitute[s] a novation of existing claims of the Landlord to rental due from MG pursuant to the underlying lease, the amounts owed thereunder were never subject to [the Hospital's] claims as Judgment Creditor." New Co.'s argument is flawed because the note does not create a novation.

A novation is the substitution of a new agreement in place of an existing agreement between the parties. *Goldman v. Olmstead*, 414 S.W.3d 346, 358 (Tex. App.—Dallas 2013, pet. denied); *In re B.N.L.-B.*, 375 S.W.3d 557, 562 (Tex. App.—Dallas 2012, no pet.). "A novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of action; in lieu of the old obligation, a party accepts the promise of performance of the new obligation instead of the performance itself." *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet). To establish a novation, the party must prove: (1) a previous valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Goldman,* 414 S.W.3d at 358. The substitution of a new agreement occurs when a later agreement is so inconsistent with a former agreement that the two cannot subsist together. *B.N.L.-B.*, 375 S.W.3d at 562–63. "In the absence of inconsistent provisions, 'a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the

obligations of the second shall be substituted for and operate as a discharge of the obligations of the first.'" *Fulcrum Cent.*, 102 S.W.3d at 277. Whether a subsequent agreement works a novation of an earlier agreement is a question of intent. *Id.* The parties must have clearly intended a novation and a novation is never presumed. *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.).

The record reflects that Landlord and MG signed a promissory note in the principal amount of $96,329.76 ("the Note"). The Note was secured by a security agreement granting Landlord a security interest in MG's accounts. Yates testified that the Note evidences MG's obligation for past due rentals on the Premises. The Note, however, does not reference the Lease, any obligations or arrearage under the Lease, or the Premises at all. Instead, it merely requires MG to pay Landlord principal and interest on the face amount of the Note in equal monthly installments of $3,043.76. There is no indication that MG's obligations under the Lease are extinguished, replaced, or even implicated. Moreover, the Barnes affidavit states that when Cambridge assigned its Landlord's interest (under the Lease) to HCRI, "the Lease was still in full force and effect, and the term of the Lease was not to terminate until March 31, 2015." On these facts, there is nothing to demonstrate that Landlord and MG intended the Note as a novation of the Lease or that the Note extinguished all of MG's obligations under the Lease. The Note was not a novation of the Lease.

### Does Discharge of The Debt Affect the Garnishment?

New Co. argues the summary judgment evidence demonstrates that as of February 1, 2012, the indebtedness had been satisfied. New Co. fails to explain, however, how the satisfaction of the debt properly captured pursuant to the writ relieved it of its statutory obligation or otherwise defeats the garnishment.

The funds captured, or impounded, by the writ of garnishment are those held by the garnishee on the date the writ is served and any additional funds deposited through the date the garnishee is required to answer. *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 164 (Tex. App.—Houston [14th Dist.] 1996, writ denied). "If the garnishee complies with the direction of the statute, he can make no payment to the debtor at any time after the service of the writ, and it will necessarily follow that when he answers he will be indebted all that he owed when the writ was served or came to owe anytime afterwards before answer." *Gause v. Cone*, 11 S.W. 162, 163 (Tex. 1889); *see also Cohen v. Advance Imports, Inc.*, 597 S.W.2d 449, 452 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (recognizing that garnishee who delivers property or funds impounded by writ may be liable to garnishor for conversion).

The garnishee served with a writ of garnishment acts as a receiver of funds subject to the writ. *See Intercont'l Terminals, Co. v. Hollywood Marine*, 630 S.W.2d 861, 863 (Tex. Civ. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (noting that garnishee holds funds as receiver or officer of court). Upon service of a writ of garnishment on funds or property in possession of the garnishee are described as "frozen," "captured," "impounded," or subject to a "lien." *See Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1937); *Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 906 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Intercont'l*, 630 S.W.2d at 863. Texas courts have long recognized the permanency of the freeze effected by a writ of garnishment by imposing a duty on the garnishee to hold the garnished property until the court issuing the writ of garnishment has issued an order that explicitly dissolves the writ. *Glassman & Glassman v. Somoza*, 694 S.W.2d 174, 178–79 (Tex. App.—Houston [14th Dist.] 1985, no writ). A garnishee who releases assets in violation of freeze on funds captured by writ "acts at his peril." *Indus. Index. Co. v. Tex. Am. Bank-Riverside*, 784 S.W.2d 114, 122 (Tex. App.—Fort Worth 1990, no writ).

Here, the debt was impounded on September 19, 2008 when the writ was served. Any subsequent discharge, release, or payment of the debt was in violation of the writ and did not relieve New Co. of its obligation to hold the funds until the garnishment was finally determined by the court. The subsequent payment of the debt does not defeat the Hospital's prima facie case for garnishment of the debt as of the date the writ was served.

***Did the Evidence Raise a Fact Issue as to the Amount of the Debt?***

New Co. also argues that the amount Barnes testified was in arrears under the Lease ($164,024.82) is incorrect because it includes delinquent payments owing under the Note. In support of its argument, New Co. relies on an exhibit to the Barnes affidavit calculating the amount in arrears under the Lease. Fifteen of the entries on this exhibit are labeled "NOTEPAY." The NOTEPAY entries total $45,656.41. New Co. contends this evidence raises a question of fact concerning the amount of the debt because, coupled with the Yates affidavit, it demonstrates that a portion of the debt pre-existed the June 1, 2006 Sublease. We disagree.

There is no evidence that any of the NOTEPAY entries pertain to the Note, or to any specifically identified note for that matter. The notations accompanying the entries are not explained. Barnes testified that upon his review of the amounts listed in the exhibit, $164,024.82 was the amount of rent in arrears under the Lease on September 19, 2008 and that no part of the arrearage accumulated before June 1, 2006. Yates testified that all of the principal balance of the Note was for rent due before the Sublease came into existence on June 1, 2006. Specifically, Yates testified:

> The Note and Letter Agreement . . . represent obligations of [MG] for past due rentals on the premises which are the subject of the Underlying Lease. All such rental obligations accrued before the Sublease . . . came into existence on or about June 1, 2006. The amount represented by the Note and the Letter Agreement were the obligations of [MG], not [New Co.].

–13–

There is no evidence that the reference to NOTEPAY on the Barnes exhibit is the same note Yates identifies. Indeed, the Yates affidavit simply authenticates a note whose principal balance accrued before June 1, 2006. Barnes testified that the records he reviewed (which included the NOTEPAY entries) reflect that no part of the arrearage under the Lease accrued before June 1, 2006. There is no competent summary judgment evidence to establish a nexus between the Note and the amount Barnes identified as in arrears under the Lease.

Because Barnes's testimony and Yates's testimony are not inconsistent or in conflict, the $164,024.82 in arrearage is uncontroverted. The evidence does not raise a fact issue as to the amount of the debt.

### Does Landlord Have a Superior Right to the Debt?

Finally, New Co. argues Landlord had a security interest in MG's accounts pursuant to MG's collateral pledge in connection with the Note. According to New Co., these accounts would necessarily include any rents payable by New Co. to MG, and the Landlord, by virtue of its security interest, had rights superior to those of the Hospital. Although we aware of no facts or authority to support the proposition that New Co. was entitled to assert Landlord's rights on Landlord's behalf, we address this argument in the context of whether the trial court's judgment is erroneously based upon New Co.'s assertion.[4]

In the present case, there is no evidence that the Landlord's security interest was perfected. To perfect a security interest in the accounts, Landlord was required to file a financing statement. *See* TEX. BUS. & COM. CODE ANN. § 9.310(a) (West 2011). The summary judgment evidence here does not include a financing statement. A security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected. *See* TEX.

---

[4] Generally, a person other than a garnishee or debtor who claims ownership of funds held by the garnishee must intervene to contest ownership of the garnished funds. *See Putman,* 775 S.W.2d at 463. The Landlord is not a party to this action.

–14–

BUS. & COM. CODE ANN. § 9.317(a) (West Supp. 2013); *Marathon Mach. Tools, Inc. v. Davis-Lynch, Inc.*, 400 S.W.3d 133, 137 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The Hospital became a lien creditor upon service of the writ of garnishment. *See* TEX. BUS. & COM. CODE ANN. §9.201(52)(A) (West 2011). On this record, there is no evidence that the Landlord had an interest in the debt superior to that of the Hospital. To the contrary, the evidence in this summary judgment record demonstrates that the Landlord's security interest, if any, is subordinate to the rights of the Hospital.

Based on the foregoing, we conclude that none of New Co.'s arguments foreclose the conclusion that MG was indebted to New Co. in the amount of $164,024.82 at the time the writ was served.

### Is the Hospital Estopped From Litigating the Garnishment Issue?

In the court below, New Co. asserted collateral estoppel as a ground upon which the Hospital's summary judgment should be denied. Here, the Hospital argues New Co. did not establish that the Hospital sought to relitigate in this garnishment action any fact determined by and essential to the judgment in the Receivership Action. In response, New Co. contends the crux of the claim in the Dallas Receivership Action is the same as the claim presented here — that is, an effort to secure rentals due under the Sublease. Thus, according to New Co., because the Receivership Action concluded before the instant case, the Hospital is estopped from asserting its garnishment claim here.

The doctrine of issue preclusion, or collateral estoppel, "is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact." *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). Collateral estoppel applies when an issue decided in the first action is actually litigated, essential to the prior judgment, and identical to an issue in a pending action. *Id.*; *see also John G. & Marie Stella*

*Kenedy Mem'l Found. v. Dewhurs*t, 90 S.W.3d 268, 288 (Tex. 2002); *Indem. Ins. Co. v. City of Garland*, 258 S.W.3d 262, 271 (Tex. App.—Dallas 2008, no pet.). Strict mutuality of parties is no longer required. *See Petta*, 44 S.W.3d at 579; *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 249 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Rather, collateral estoppel applies when the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue. *Petta*, 44 S.W.3d at 579.

There is no collateral estoppel effect unless the particular issue in the current case was have been actually litigated in the earlier proceeding, which means that the issue was raised by the pleadings or otherwise submitted for determination and was determined by the fact finder. *Rexrode v. Bazar,* 937 S.W.2d 614, 617 (Tex. App.—Amarillo 1997, no writ). The question is whether the record sufficiently notified the trial court of the issues decided in the prior case. *See Calabrian Corp. v. Alliance Specialty Chems, Inc*., 418 S.W.3d 154, 160 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The issue decided in the prior action must be identical to the issue in the pending action. *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *SWEPI, L.P. v. Camden Res., Inc*., 139 S.W.3d 332, 339 (Tex. App.—San Antonio 2004, pet. denied).

In support of its argument, New Co. identifies only a select portion of the Hospital's pleading in the Receivership Action that states, "the "rights of defendant under the Underlying Lease, the . . . Sublease, and/or the Marlow Sublease." It is axiomatic, however, that a reference to the existence of the Sublease does not necessarily equate to a request for adjudication of the garnishment. And read in its appropriate context, the foregoing sentence follows a request for the court to appoint a receiver "to take possession of all assets and property . . . the rights of defendant under the Underlying Lease, [and the] the Sublease . . . and/or the Premises and the above described Leasehold Estate." Viewed as a whole, the pleading reflects that the Hospital

–16–

sought to have a receiver appointed to take control of MG's non-exempt assets, which included MG's account receivable for rent.

But even if we were to afford the Hospital's application for the appointment of a receiver the liberal construction advanced by New Co., there is nothing in the record to reflect that the issue of whether New Co. was indebted to MG was actually determined in the Receivership Action. The summary judgment record includes the Dallas County Order denying the appointment of a receiver, entitled "Order Denying Plaintiff's First Amended Application for Turnover After Judgment and Appointment of Receiver." The order states only that the application is denied. Although the order references evidence adduced at a hearing, there is no record of such evidence, or of the hearing. There are no findings of facts and conclusions of law.

A basic tenet of collateral estoppel is that an issue must have been actually resolved for it to have preclusive effect. *SWEPI*, 139 S.W.3d at 339. Where the first fact finder did not determine the ultimate fact question at issue in the second proceeding, but merely denied the requested relief, collateral estoppel does not apply. *See id*. The record does not reflect that the garnishment issue was actually resolved in the Receivership Action. Therefore, New Co. failed to establish the elements of collateral estoppel as a matter of law. The Hospital was not estopped from litigating the garnishment in this case.

### *Is New Co. Entitled to Offset?*

New Co. argues that if there was a garnishable indebtedness, it was entitled to an offset, and the amount of the offset to which it is entitled exceeds the amount of the debt.

In the Yates affidavit submitted by New Co. in response to the Hospital's motion for summary judgment, Yates identifies several payments New Co. made on behalf of MG. These payments include: payment of the Note (which New Co. approximates as over $99,000), payment of an American Express bill for $36,000, payment of a federal tax lien against MG for

$6,774.31, and other amounts aggregating $35,794.07. New Co. contends the $177,568.38 in total payments exceed the amount of the debt.

The right of offset, set-off, or reimbursement against damages is an affirmative defense which must be pleaded and proved by the party asserting it. *See Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *Hartnett v. Hampton Inns, Inc.*, 870 S.W.2d 162, 166 (Tex. App.—San Antonio 1993, writ denied). Generally, an affirmative defense must be pled in a responsive pleading, or the defense is waived. *See* TEX. R. CIV. P. 94; *Man Engines & Components, Inc. v. Shows*, No. 12-0490, 2014 WL 2535963, at *3 (Tex. June 6, 2014) (stating Rule 94 makes clear that affirmative defenses must be raised in pretrial pleadings); *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex. 1992) (stating affirmative defense waived if not pleaded).

Here, New Co.'s defensive claim is waived because New Co. did not plead or prove offset. While an unpleaded affirmative defense "may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party fails to make an appropriate complaint," *Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.), there was no trial by consent here. The Hospital objected to New Co.'s evidence and the lack of a pleading to support the defense, and the record affirmatively demonstrates that the trial court overruled the objection.

And even if the defense had been properly asserted in the court below, there is no evidence that the payments were anything other than gratuitous and imposed any repayment obligation on MG. *See Alon USA, LP v. State*, 222 S.W.3d 19, 29 (Tex. App.—Austin 2007, pet. denied) (stating mutuality of obligation an essential element of offset). New Co. is not entitled to an offset of the indebtedness.

*Conclusion.*

The summary judgment evidence conclusively proves that on September 19, 2008, New Co. was indebted to MG for $164,024.82 and the Hospital was entitled to judgment as a matter of law. Therefore, the trial court erred in granting New Co.'s motion and in denying the Hospital's motion. The Hospital's issues are sustained.

We reverse the trial court's judgment and render judgment that Tenet Health Systems Hospitals Dallas, Inc. recover $164,024.82 from North Texas Hospital Physicians Group, P.A.

/Kerry P. FitzGerald/

121719F.P05

KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TENET HEALTH SYSTEMS HOSPITALS
DALLAS, INC., Appellant

No. 05-12-01719-CV     V.

NORTH TEXAS HOSPITAL
PHYSICIANS GROUP, P.A., Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-00717-2009.
Opinion delivered by Justice FitzGerald.
Justices Moseley and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that:
    Tenet Health Systems Hospitals Dallas, Inc. recover $164,024.82 from North
    Texas Hospital Physicians Group, P.A..

It is **ORDERED** that appellant TENET HEALTH SYSTEMS HOSPITALS DALLAS,
INC. recover its costs of this appeal from appellee NORTH TEXAS HOSPITAL PHYSICIANS
GROUP, P.A..

Judgment entered July 30, 2014