Lay v. Great Southern Lumber Company.

[79 South. 822, In Banc.]

1. Landlord and Tenant. *Eviction. Pleading.*

In a suit by a tenant for damages for being unlawfully evicted from the rented premises by the landlord; where plaintiff alleged that he leased a shop for an indefinite period on a monthly basis and that defendant, without notice to terminate the lease, entered the premises while plaintiff was temporarily absent, and nailed up the door, rendering it impossible for the plaintiff to remove his effects. In such case, defendant could not show in

defense that the premises were to be occupied only during plaintiff's good behavior, and that the premises were closed because of plaintiff's misconduct, without specially pleading these facts.

2. SAME.

In such case, the defendant was liable for actual damages, and the question as to whether defendant was also liable for punitive damages, was a question for the jury.

3. LANDLORD AND TENANT. *Month to month tenancy. Notice.*

Where the agreement to rent a building, at a fixed price a month, was indefinite as to duration, such a tenancy was from month to month and under Code of 1906, section 2882 (Hemingway's Code, section 2380), so providing, the tenant was entitled to a notice of one week to terminate the lease.

APPEAL from the circuit court of Marion county.
HON. H. E. WEATHERSBY, Judge.

Suit by W. H. Lay against the Great Southern Lumber Company. From a judgment for defendant, the plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Davis & Langston* and *Hall & Hall,* for appellant.

*Mounger & Ford,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant sued the appellee in the circuit court for damages for closing a barber shop rented by the appellant from the appellee, and alleged in his declaration that the appellee in order to maintain and operate its business employed a large number of men in its camps, and in order to accommodate its various employees it owned and maintained a great many houses or car houses situated on its land and about five miles from Columbia, Miss., and amoung other houses it owned a car house used as a barber shop and from time to time leased or rented to various people said houses and said barber shop to the end that its employees might find accommodation in its camps; that plaintiff leased the

barber shop from the appellee through its agent and manager, Frank Cassidy, said Cassidy being general superintendent and manager of said camp of said lumber company, and it being his duty, among other things, to lease, rent, and let to various persons the said houses, and it was his duty to see that persons occupying said houses as tenants were not disturbed in their occupancy; that appellant leased said barber shop for an indefinite period of time paying a monthly rental of four dollars per month for the use of said house; that he opened a barber shop therein, also a pressing club, and was occupying said house in pursuance of his contract; that without notice to him, and without any notice to terminate the tenancy, and while he was temporarily absent from said barber shop, said Great Southern Lumber Company, through its agent Cassidy, caused said shop to be entered and the door nailed up so that plaintiff could not enter therein, and the windows closed down so he could not enter or use the said barber shop or remove his effects therefrom; that said acts were prompted by ill will, malice, and hatred towards plaintiff; that it was maliciously, wantonly, and unlawfully done, and as a result of said unlawful and wrongful acts plaintiff was unable to pursue his business as a barber in said house, whereby he was greatly damaged; that he was forced to sell his barber outfit at a reduced price from what he could have obtained could he have entered said buildings and shown his appliances and conveniences; that the business was worth three hundred dollars, and he had to sell his supplies and fixtures for fifty dollars less than their real value; and that he was entitled to recover exemplary or punitive damages in the sum of two thousand nine hundred and ninety dollars.

The defendant filed the following plea:

"The defendants say that neither they nor either of them are guilty of the alleged wrongs and injuries

complained of in the plaintiff's declaration, nor of any part thereof.

There was no other plea filed and no notice under the general issue. Mr. Cassidy, the manager of the Great Southern Lumber Company, was introduced as a witness, and testified that he was foreman or superintendent of the Great Southern Lumber Company at its camps and had charge of renting and leasing houses of the company, and that he had rented Mr. Lay a barber shop for four dollars per month, and that there was no definite time fixed and no definite contract made as to how long he was to stay there, and that he (Cassidy) had the house nailed up without giving any notice of the termination of the tenancy to the plaintiff. The defendant offered evidence through its said manager and others that the plaintiff was a drinking man, and that he did not keep the shop open at all reasonable hours, and that he did not keep a clean and sanitary shop. This evidence was objected to by the plaintiff, objection overruled by the court, and exception taken. The defendant also offered evidence without any further plea than the one above set out, that Mr. Cassidy, learning that Mr. Lay was drinking, went to him and told him that he could not keep the shop if he continued drinking, and that Mr. Lay promised not to drink any more, and was allowed to continue to occupy the shop, but that later Mr. Cassidy learned that Lay was drinking and nailed up the shop.

The plaintiff requested the following instructions which were refused by the court:

"The court instructs the jury for the plaintiff that he is entitled to a verdict for actual damages in this case, and the jury should so find and assess the plaintiff's actual damages at such amount as the jury may believe from the evidence the plaintiff sustained, not to exceed the amount sued for.

"The court instructs the jury for the plaintiff that, even though the jury may belive from the evidence that

the plaintiff drank whisky to excess in and about the barber shop in question, and although the jury may further believe from the evidence that the plaintiff failed and neglected to keep the barber shop in question open to suit the will and pleasure of the defendants in this case and of the employees of the Great Southern Lumber Company, these facts nor any of them would justify the defendants in this case in nailing up the barber shop which had been rented by the plaintiff at the Great Southern Lumber Company's logging camps.''

The court granted the defendant, among others, the following instructions:

''The court instructs the jury for the defendant that the burden of proof in this case is on the plaintiff to show by a preponderance of the evidence, and to the satisfaction of the jury, that the defendant wrongfully and unlawfully evicted the plaintiff from the house in question, and the plaintiff cannot recover on this proof alone; but the plaintiff, in addition to this, must also prove that he was injured and damaged by reason of such eviction, and he must prove the nature thereof.

''The court instructs the jury for the defendant that, under the evidence in this case, the plaintiff is not entitled to recover the item of three hundred dollars claimed by him for loss of business, neither is he entitled to recover the item of fifty dollars claimed by him as loss sustained by him in the sale of his barber shop, and in considering the damages, if any, to be allowed the plaintiff in this case, the jury should not consider the above items.

''The court instructs the jury for the defendant that if they believe from the evidence in this case that the defendant provided the house in question for the purpose of affording its employees the convenience of a barber shop, and that it let the plaintiff go into the possession of said house with the understanding and in the expectation that he would conduct a barber shop therein for the convenience of the employees of the

company, and would keep said shop open and in a clean and sanitary condition, and with the understanding that the plaintiff did not hold the right to the possession of the said house for any definite period, but that his right to the possession of said house should continue only so long as his services should be satisfactory to the defendant, the Great Southern Lumber Company, then and in such case the plaintiff was not a tenant for a definite term and the plaintiff was not a termor, and was not entitled to notice to quit possession of said house; but the defendant had a right to terminate said possession at any time that it chose, and the defendant had a right to peaceably take possession of said house and to use such force as was necessary in so doing.

"The court instructs the jury for the defendant that, if they believe from the evidence that the plaintiff was allowed to go into the possession of said barber shop and to remain therein with the understanding that he was to conduct a barber shop therein, then the law implies an obligation upon his part to maintain said shop in a reasonably and ordinarily skillful manner, and to keep the same open at reasonable and ordinary hours, and the law holds him to the obligation; and, if they believe from the evidence that the defendant failed to do so, then his right to the occupancy of said house ceased, and written notice was not required to terminate his right."

The court granted the defendant numerous other instructions predicated upon the theory that the defendant had a right to close the barber shop without giving notice of the termination of the tenancy, or any notice to vacate the premises, as required by section 2882, Code of 1906, section 2380, Hemingway's Code.

We think these several actions of the court constitute error. If the company desired to set up the defenses it undertook to maintain as to misconduct, the understanding between the plaintiff and defendant growing

out of his alleged misconduct and habits, it would have to plead them so as to give notice to the plaintiff of said matters. Under the pleadings and proof in this case, the plaintiff was entitled to a peremptory instruction as to liability, and was also entitled to have the jury consider and to submit to the jury the question of exemplary damages. Under the undisputed evidence in this case, this was a lease from month to month, and the plaintiff was entitled to the notice required by section 2882, Code of 1906, section 2380, Hemingway's Code, which reads as follows:

"Notice to Terminate Tenancy.—Notice to quit shall be necessary only where the term is not to expire at a fixed time. In all cases in which a notice is required to be given by the landlord or tenant to determine a tenancy, two months' notice, in writing, shall be given where the holding is from year to year, and one month's notice shall be given where the holding is by the half-year or quarter-year; and where the letting is by the month or by the week, one week's notice, in writing, shall be given."

It has been decided by this court under this section that letting of real property by the month to continue for an indefinite period according to the wishes of the contracting parties can only be terminated at the end of the monthly term then pending by giving one week's notice in writing. *Wilson* v. *Wood,* 84 Miss. 728, 36 So. 609. The statute also provides methods for dealing with a tenant holding over, and for a judicial hearing in sections 2885, 2886, and 2890, of the Code of 1906, sections 2383, 2384, and 2388, Hemingway's Code. The landlord is not a law unto himself, but must pursue the remedies afforded him by the law of the land.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

STEVENS, J. (dissenting).

The issues in this case, in my judgment, have been presented to the jury under instructions which fairly state the law for both parties, and the verdict of the jury should not be disturbed. The theory of the appellee and its proof tended to show that appellee, the Great Southern Lumber Company, owned and operated a lumber business about five miles from the city of Columbia, and that its entire plant, including many houses and so-called "car houses," was situated on land belonging to the defendant, and constituting the general lumber camp of the defendant; that, among other things necessary for the successful prosecution of this large lumber business, it was necessary to provide a place for, and to engage the services of, a good camp barber; that some time prior to this controversy the company entered into an understanding with one Lott, a barber, to occupy a certain car house as a barber shop at a monthly rental of four dollars per month, with the express understanding that the barber was to conduct a clean, sanitary barber shop and pressing club for the accommodation of the management and employees of the lumber company; that the presence of a barber shop at the camp was necessary for the convenience and comfort of the camp employees and to prevent them from going five miles to the city of Columbia for these necessary accommodations; that the defendant company was undertaking to provide these conveniences and to maintain community service on a proper co-operative basis. The position of the defendant further is, and its proof tends to show, an express understanding between the manager of the camp and Mr. Lott that there should be no drinking and no dispensing of liquors in or about this barber shop.

It appears that Mr. Lott served as a barber for a certain period of time, and then sold his outfit and turned over the barber shop to his successor, Mr. Lay, the plaintiff herein; that before doing so he consulted

Mr. Cassidy, the manager, and the manager acquiesced in Lay stepping into the shoes of Mr. Lott, with the express understanding ''that it was all right, if he (Lay) would cut out drinking.'' Mr. Lott thereupon reported the substance of this conversation to Lay, who, according to the defendant's proof, took charge of the barber shop with the express understanding that he would conduct a clean, sanitary shop; that he would quit drinking; and that he would not permit any liquor to be dispensed in or about the shop. There is some dispute about the testimony in this case, but on this point Mr. Lay, as witness for himself, did not expressly deny the conversation which Lott reported, saying: ''I don't remember him saying anything like that. He might have said something like that; I don't know.'' In other words, Mr. Lay refused to deny the substance of this conversation and understanding between Lott and Cassidy. It affirmatively appears that the company had an interest in the conduct of the barber and the kind of business he conducted, and that it was trying to safeguard this interest and the interest of its employees and to uplift the community life. It was in the interest of the community that the barber shop should be kept open and running regularly, and provide a sanitary place in which the managers and employees could go to have their barber work done and conveniently to obtain a bath, and that the purpose of the renting of the shop was not a commercial venture simply to collect rents, but that the primary purpose was as stated. It was given in evidence that there was a general understanding about the camp that there should be no drinking. For the defendant it was shown that the plaintiff did not keep and perform this general understanding to conduct a sanitary barber shop, but, on the contrary, that he was frequently absent so that employees could not obtain accommodations, and that he repeatedly and regularly got drunk, that the barber shop was unsanitary, and that the conditions were intolerable.

Under this state of facts, the manager of the defendant company, while Mr. Lay was absent from his shop, proceeded to take charge of the barber shop and thereafter declined to permit the plaintiff to occupy same, and in doing so the proof of defendant tends to show that its manager acted in the utmost good faith and not with any malice or ill will.

One ground for the reversal of this case is the position that the defendant should have filed a special plea. On this point it should be observed that this is a damage suit initiated by appellant himself, and that the burden was upon him to show a violation of his rights and consequent damage. He comes into court with a declaration, which, among other things, charges that: "The Great Southern Lumber Company, in order to maintain and operate its business in Marion county, and in order to accommodate its various employees in said county, owned and maintained a great many houses or car houses, which were situated on its lands in Marion county, Miss.; . . . that the Great Southern Lumber Company leased or rented to the said plaintiff, W. H. Lay, one of these houses or car houses, in which it was understood by the defendants and the plaintiff that the plaintiff was to carry on in said building the business of a pressing club and the business of running a barber shop, the plaintiff to pay the defendant a certain price therefor per month; that while he was in possession of this building, occupying the same in the manner stated and under his agreement as aforesaid, and while he was carrying on therein the business as alleged, it became necessary for him to be temporarily absent from said building, etc."

While the question as to whether the defendant should or should not have interposed a special plea is not free from difficulty, I think it reasonably appears that the declaration itself charges the purpose for which the defendant company had leased the barber shop, the general understanding that a barber shop and pressing

club business should be conducted therein in order, as stated in the declaration, "to accommodate its various employees," and that the plaintiff had performed his part of the understanding and was only temporarily absent when the defendant, without right and with force and arms, took possession. General issue put all of these matters to the jury, and the jury, by its findings, has certified that the plaintiff, instead of running a clean and sanitary shop without drinking, has been guilty of violating the general understanding and has, on the contrary, lost his position through his own wrong.

The question before the jury was whether the plaintiff ran a barber shop or a booze shop. The jury found that he ran a "booze" shop, and I think the court, especially in view of the enlightened movement for nation-wide prohibition, should be reluctant, by permitting a recovery in this case, to place a premium on whisky drinking and the operation of a blind tiger. The plea of general issue put this whole question before the jury, and the jury have found adversely to the plaintiff's contention.

I cannot subscribe to the statement in the majority opinion that the undisputed evidence in this case shows "a lease from month to month and the plaintiff was entitled to the notice" required by our statute. This is a case with its own peculiar facts, and the facts are controlling. The plaintiff failed and the court now fails, to discriminate between the usual occupancy of a tenant under a regular commercial understanding or lease from month to month and the occupancy of a building with certain legitimate restrictions and limitations in the interest of good morals. There would be room for contention that the plaintiff was entitled to notice if this was a proceeding by the lumber company in an action of unlawful entry and detainer for the recovery of possession, but this is not a possessory action at all. Here the plaintiff sues for damages, and in doing so, according to appellee's theory, comes into

court as a result of his own wrong. He breached his own understanding to conduct an orderly shop, and after doing so now seeks to hold the company in damages for taking charge of its own property. There is no contention in this case that the defendant destroyed any of the plaintiff's property, and there can be no contention that the defendant destroyed plaintiff's barber business. Even if the plaintiff was dispossessed, he was still a professional barber, and there was no restriction on his plying his trade anywhere he pleased. If there was any damage at all, at most it would only be the difference between the rental value of the shop at four dollars per month, actually paid, and any increased rental value which plaintiff might show. There was no proof tending to show that the shop was worth more than four dollars per month to the plaintiff, and so no damage whatever was shown. It is conceded in the majority opinion that the plaintiff could have been ousted upon one week's notice in writing. All, then, which the plaintiff lost was a fraction of a month occupancy. What was this fraction of a month worth? *De minimis non curat lex;* but, should this maxim be disregarded, the plaintiff would only be entitled to nominal damages. The majority opinion dignifies this action into a real handsome damage suit, even going so far as to say that the plaintiff was entitled to a peremptory instruction as to liability, and was also entitled to have the jury consider and to submit to the jury the question of exemplary damages. What, I should ask, under the proof in this case, is the defendant to be punished for? If the testimony for the defendant be true, the shoe would be on the other foot.

I concede that there were two conflicting theories upon which this case was decided. The plaintiff has his theory and in presenting it obtained instructions which liberally put his theory to the jury. The plaintiff asked for and received the following instructions:

"The court instructs the jury for the plaintiff that, if you believe from the evidence in this case that the plaintiff rented the building in question from the defendants by the month for an indefinite period of time for the purpose of running a barber shop therein indiscriminately for the general. public, and that his said tenancy was not to expire at a fixed time, and that he did not agree to terminate his said tenancy, and that the defendants did not give him written notice to terminate his said tenancy, then in that event the defendants would have no right under the law to nail up the said building against the will of the plaintiff, and they would be liable to the plaintiff, if they did so, for any damage which the plaintiff may have sustained as the direct and proximate result of said building having been nailed up, and if, in renting the said building from the defendant Frank Cassidy the plaintiff rented the same for the sum of four dollars per month for the plaintiff to operate a barber shop therein for the general public indiscriminately as aforesaid, then the fact that the plaintiff may have drunk whisky to excess and may not have kept said barber shop in a sanitary condition and may have absented himself from said barber shop to the displeasure and inconvenience of the employees of the Great Southern Lumber Company and to the displeasure and inconvenience of the defendant Frank Cassidy, would not justify the defendants in nailing up the said building.

"The court instructs the jury for the plaintiff that if you believe from the evidence in this case that the plaintiff rented the building in question from the defendants by the month for the sum of four dollars per month for an indefinite period of time for the purpose of running a barber shop in said building indiscriminately for the use of the general public, and that the plaintiff's tenancy was not to expire at a fixed time, and that he did not agree to terminate his tenancy, and

that the defendants did not give the plaintiff a written notice to terminate his tenancy, and that the defendants, Great Southern Lumber Company and Frank Cassidy, . acting by and through the said Frank Cassidy, did, without the permission or consent of the said plaintiff, willfully, wrongfully, and wantonly nail up the said building,'' etc.

''The court instructs the jury for the plaintiff that if you believe from the evidence in this case that the plaintiff rented the building in question from the defendants by the month for the sum of four dollars per month for an indefinite period of time for the purpose of running a barber shop and with the understanding that he would run a barber shop for the use of the general public indiscriminately, and that the plaintiff's tenancy was not to expire at a fixed time, then in that event the plaintiff would have a right under the law to keep said building opened or closed as he saw fit, and he would have a right under the law to regulate his hours in working as he saw fit, and he would have a right under the law to drink whisky at such times as he saw fit in and about the said building,'' etc.

These instructions told the jury in plain language that if the relation of landlord and tenant existed between the parties, and there were no restrictions or limitations placed upon the use of the building, the plaintiff had a right to run any kind of a shop he pleased, to regulate his own hours, and even to drink whisky in and about the shop. Under these instructions, the question of damage or no damage was put fairly and squarely to the jury, the plaintiff had his day in court, and lost. It is not now for the court to say whether he was a devout man or. a ''booze head,'' as some of the witnesses describe him. This was a question for a jury of his peers to pass on.

Furthermore, the plaintiff asked for and obtained instructions 9 and 12, submitting to the jury the question

of punitive damages, and the plaintiff has no ground to complain, therefore, at any refusal of the court to submit this issue.   The nature of this action should not be overlooked.   It is not an action to recover possession, but an action for damages, and, this being so, the observation of our court, speaking through Mr. Justice Cooper in *Moring* v. *Ables,* 62 Miss. 263, 52 Am. Rep. 186, quoting from Washburn on Real Property, is pertinent, viz.:

"If the owner of land wrongfully held by another enter and expel the occupant, but makes use of no more force than is reasonably necessary to accomplish this, he will not be liable to an action of trespass *quare clausum,* nor for injury to the occupant's goods, nor for assault and battery, although in order to effect such expulsion and removal it becomes necessary to use such force and violence as to subject him to indictment at common law for a breach of the peace, or under the statute for making forcible entry."

For the reasons foregoing I think the case should be affirmed.

Cook, J., concurs in the foregoing dissenting opinion.