# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01673-COA

GORDON KLEYLE                                                    APPELLANT

v.

MYRNA DEOGRACIAS AND PHILIP                                      APPELLEES
DEOGRACIAS, INDIVIDUALLY AND/OR D/B/A
THE RAILROAD CAFÉ, LLC

DATE OF JUDGMENT:            08/29/2014
TRIAL JUDGE:                 HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:   PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     BRIAN RANDOLPH BLEDSOE
                             F. DOUGLAS MONTAGUE III
ATTORNEYS FOR APPELLEES:     RICHARD C. FITZPATRICK
                             T. JACKSON LYONS
NATURE OF THE CASE:          CIVIL - CONTRACT
TRIAL COURT DISPOSITION:     GRANTED APPELLEES' MOTION TO
                             DISMISS
DISPOSITION:                 REVERSED AND REMANDED - 06/28/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

     **EN BANC.**

     **WILSON, J., FOR THE COURT:**

¶1.     Gordon Kleyle sued Myrna and Philip Deogracias and The Railroad Café LLC for

unpaid rent under a lease. The Deograciases[1] eventually moved to dismiss, arguing that

Kleyle's claim was barred because the lease was actually a sublease; Kleyle's prime lease

with the Alabama Great Southern Railroad Company ("AGS") prohibited subleasing without

---

[1] We refer to the defendants collectively as the Deograciases unless context dictates otherwise.

AGS's consent; and the sublease was void because Kleyle failed to obtain AGS's consent. The circuit court agreed with the Deograciases and granted their motion to dismiss. However, we conclude that the anti-assignment provision of the Kleyle-AGS lease was for the benefit of AGS alone. Therefore, the Deograciases lack standing to raise the provision as a defense to their obligation to pay rent under the sublease. Accordingly, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2. Kleyle alleges that on December 22, 2007, he entered into an oral agreement with the Deograciases to lease them a building in Poplarville. The Deograciases intended to use the building to operate a new restaurant, The Railroad Café. Kleyle contends that the oral lease was reduced to writing on February 9, 2008. Under the terms of the written lease, the Deograciases were to pay $1,850 per month in rent, the lease was to run from February 2008 through February 2010, and the Deograciases could cancel the lease at any time by providing Kleyle with ninety days' written notice. According to Kleyle, the Deograciases stopped paying rent as of August 1, 2008, and they gave oral notice on June 23, 2009, that they were vacating the building.

¶3. On May 18, 2011, Kleyle filed a complaint in the Pearl River County Circuit Court against the Deograciases and The Railroad Café, claiming that they had defaulted on the lease agreement. Kleyle sought $24,000 in past-due rent, damages for personal property that he claimed the Deograciases had removed from the premises, and the cost of repairs to equipment and appliances.

2

¶4.    In June 2011, The Railroad Café answered Kleyle's complaint. The answer asserted that the written lease attached to Kleyle's complaint was forged, that there was only an oral month-to-month lease, and that oral notice of cancellation was provided to Kleyle when the restaurant ceased operations in October 2008. The answer also alleged that on November 17, 2008, the Deograciases had sold The Railroad Café to Rudy Packard, who had operated the restaurant since that time and had paid Kleyle rent of $200 per week through June 23, 2009. The Deograciases filed a separate motion to dismiss, arguing that they were not personally liable because the only parties to the lease agreement were Kleyle and The Railroad Café. The circuit court denied the Deograciases' motion to dismiss in August 2011.

¶5.    In January 2013, the Deograciases filed a motion to add AGS as a party to the case on the ground that AGS owned the property at issue in this litigation, which it had subleased to Kleyle. In response, Kleyle argued that AGS was not a necessary party because the Deograciases' debt was to him, not AGS, and because AGS owned only the land, not the leased building. However, the circuit court granted the Deograciases' motion, stating, "[AGS] . . . is a necessary party to those proceedings, and as such, shall be joined as a party."

¶6.    On June 11, 2013, the Deograciases filed an amended answer, raising as a defense, for the first time, that Kleyle had violated the anti-assignment/sublease provision contained in the lease between AGS and Kleyle. That provision states in relevant part:

> 12. Assignment. Tenant may not assign this Lease or any interest thereunder or sublet the Premises in whole or in part or allow all or a portion of the Premises to be used by a third party without the prior written consent of Landlord. . . . All requests for an assignment or sublease shall be accompanied by a copy of the proposed assignment or sublease agreement and an administrative fee in the amount of $750.00. Any assignee shall become liable

3

directly to the Landlord for all obligations of Tenant hereunder. No such assignment or sublease nor any subsequent amendment of the Lease shall release Tenant or any guarantor of Tenant's obligations hereunder. If any such subtenant or assignee pays rental in excess of the rental due hereunder or if Tenant receives any other consideration on account of any such assignment or sublease, Tenant shall pay to Landlord, as additional rent, one-half of such excess rental or other consideration upon the receipt thereof. Any assignment or sublease made in violation of this Paragraph 12 shall be void and shall constitute a default hereunder.

¶7. After being served with the Deograciases' amended answer, AGS filed a motion to be dismissed as a party, stating that it was "at a loss to understand why (or, for that matter, if) it ha[d] been formally added as a party." AGS pointed out that no claim had been asserted against it, that no party had requested any relief from it, and that the dispute between Kleyle and the Deograciases concerned "an agreement to which [it] was not a party." AGS concluded that it had "no dog in this fight" and should be dismissed from the case. AGS was, eventually, dismissed with prejudice after providing an affidavit from one of its employees regarding the AGS-Kleyle prime lease. The affidavit stated in part:

> A search of AGS's records maintained for the AGS Lease [to Kleyle] and the subject premises has not revealed any written request from . . . Kleyle seeking permission to enter into the Lease Agreement with The Railroad Café. . . . In general, AGS does not recognize subleases, transfers and/or assignments of leases entered into by tenants who do not obtain prior written permission from AGS to do so.

Kleyle and the Deograciases stipulated that the affidavit was "admissible for all purposes and [that] the averments stated therein [were] true and correct and admissible as evidence of the facts stated therein."

¶8. Based on the anti-assignment provision of the AGS-Kleyle sublease and the affidavit from AGS, the Deograciases filed a "Motion to Dismiss For Failure To State A Claim As

4

The Sublease Upon Which This Action Is Based Is Void." As the motion's title suggests, the Deograciases contended that any sublease they had with Kleyle was void—and that they could not be held liable for unpaid rent—because Kleyle failed to obtain AGS's consent to the sublease. Kleyle filed a response in which he contended, inter alia, that the Deograciases lacked standing to assert rights under the AGS-Kleyle prime lease. The court granted the Deograciases' motion, and dismissed the complaint with prejudice based on the "plain language" of the anti-assignment provision of the AGS-Kleyle prime lease. Kleyle then filed a motion to reconsider and, after that motion was denied, a timely notice of appeal.

## DISCUSSION

¶9. As set out above, the basic facts assumed to be true for purposes of this appeal are straightforward.[2] Kleyle subleased a building to the Deograciases. When the Deograciases stopped paying rent, Kleyle sued them for breach of the sublease. The Deograciases—having already occupied and enjoyed the use of the leased premises—eventually raised as a defense that Kleyle had failed to obtain AGS's consent to the sublease, as required by the prime lease

---

[2] The dispositive motion filed by the Deograciases was styled as a motion to dismiss for failure to state a claim, but it relied in part on an affidavit attesting to facts outside of the pleadings, which ordinarily would require conversion to a summary judgment motion and compliance with the notice requirements of Mississippi Rule of Civil Procedure 56. *See, e.g.*, *Palmer v. Biloxi Reg'l Med. Ctr.*, 649 So. 2d 179, 183 (Miss. 1994). The motion was not formally converted, and the notice provisions of Rule 56 were not followed, but, as noted above, the parties stipulated that the affidavit was "true and correct" and "admissible for all purposes." In addition, Kleyle has never raised any procedural objection to the motion. In any event, the procedural issue is unimportant because, for the reasons explained below, the anti-assignment provision of the AGS-Kleyle lease is not a defense to the Deograciases' obligation to pay rent under their sublease; therefore, Kleyle's complaint should not have been dismissed on that ground regardless of the procedural posture of the case.

5

between AGS and Kleyle. Although this appears to be an issue of first impression in Mississippi, the prevailing rule in other jurisdictions is that such an anti-assignment provision is for the benefit of the original landlord alone. Therefore, a subtenant who has already enjoyed use of the leased premises lacks standing to raise the provision as a defense to an obligation to pay rent under the sublease. We agree that this is the correct rule, as there is no persuasive reason that the Deograciases should be excused from paying rent despite their having already enjoyed the benefits of the sublease. Accordingly, we reverse and remand for further proceedings.

¶10. Kleyle cites persuasive authority from Texas holding that a prohibition against subleasing without the landlord's consent "is for the benefit of the landlord," and, therefore, the right to enforce the provision "belongs to the landlord" alone. *Tenet Health Sys. Hosps. Dallas Inc. v. N. Texas Hosp. Physicians Grp.*, 438 S.W.3d 190, 198 (Tex. Ct. App. 2014). For this reason, a subtenant cannot enjoy use of the leased premises and then invoke the prohibition as a defense to its obligation to pay rent under its sublease. *Id. Tenet*'s holding reflects at least a century of Texas precedent. *See id.* (collecting cases); *Huffstutler & Howell v. McKenzie*, 163 S.W. 652, 654 (Tex. Civ. App. 1914) ("A stipulation that the lessee shall not sublet the premises without the written assent of the lessor is for the exclusive benefit of the latter, and, if he does not take advantage of it, no one else can." (quoting *Montecon v. Faures*, 3 La. Ann. 43, 1848 WL 3511 (La. 1848))).

¶11. *Tenet* is also consistent with the prevailing rule in other jurisdictions. As a leading treatise explains, "[i]t is generally said that a restriction against assignment or sub-letting is

6

for the landlord's benefit," so a sublease made in violation of the restriction is valid absent some action by the landlord to enforce the restriction. 1 Milton R. Friedman & Patrick A. Randolph Jr., *Friedman on Leases* § 7:3.5, at 7-75 to -76 (5th ed. 2005). Therefore, "a tenant may recover rent from his subtenant though making the sublease was forbidden by the prime lease." *Id.* at 7-76; *see Fordyce v. Young*, 39 Ark. 135, 138 (1882) ("There was a covenant against sub-letting without the consent of the [lessor], but it can not be seriously contended that the sub-lessee could first enjoy the lands, and then take advantage of that."); *OTR v. Flakey Jake's Inc.*, 770 P.2d 629, 631 (Wash. 1989) ("As we have previously held, the invalidity of an assignment, on the ground that it has not been assented to by the lessor, can be raised only by the lessor." (quotation marks omitted)); *Goodwin v. Upper Crust of Wyo. Inc.*, 624 P.2d 1192, 1195 (Wyo. 1981) ("[T]he general rule is that a sublessee cannot assert as a defense in an action based upon the sublease the fact that the sublease violates a covenant against underletting in the original lease."). The Deograciases cite three cases in which anti-assignment provisions were enforced, but in each case the provision was enforced *by the party whose consent was required under the prime contract*.[3] None of these is inconsistent with the rule that a subtenant lacks standing to assert the anti-assignment provision of a prime lease as a defense to its obligation to pay rent under its sublease.

¶12. The general rule followed in other states is also consistent with Mississippi law that

---

[3] The three cases are *Condo v. Conners*, 266 P.3d 1110 (Colo. 2011); *Bass-Fineberg Leasing Inc. v. Modern Auto Sales Inc.*, No. BCA0098-M, 2015 WL 134212, at *3-*4 (¶¶14-20) (Oh. Ct. App. Jan. 12, 2015); and *Holloway v. Republic Indemnity Co. of Am.*, 147 P.3d 329 (Or. 2008). Of the three, only *Bass-Fineberg* involved a lease (for a bus). *Condo* involved an LLC agreement, and *Holloway* involved a commercial insurance policy.

a party may not enforce a contract to which it is neither a party nor a third-party beneficiary. *See, e.g.*, *Garrett Enters. Consol. Inc. v. Allen Utils. LLC*, 176 So. 3d 800, 804-05 (¶¶12-14) (Miss. Ct. App. 2015). It is also a fair and equitable rule, as there is no sound reason that a subtenant should be allowed to enjoy full use and occupancy of the leased premises and then avoid paying rent by claiming that the sublease was "void." *See Tenet*, 438 S.W.3d at 198. Under this rule, it is clear the anti-assignment clause in the prime lease between Kleyle and AGS is not a defense to the Deograciases' obligation to pay rent under the sublease. Only AGS had standing to enforce that provision, but AGS never attempted to do so or in any way interfered with the Deograciases' rights under the sublease. Indeed, in the circuit court, AGS confirmed that even now it has "no dog in this fight." Because AGS's lack of consent to the sublease never deprived the Deograciases of use or occupancy of the premises, it is not a basis for the Deograciases to avoid their concomitant obligation to pay rent. Accordingly, we reverse the circuit court's dismissal of Kleyle's complaint and remand for further proceedings consistent with this opinion.

¶13. **THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**