# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00671-COA

GORDON KLEYLE                                                                 APPELLANT

v.

MYRNA DEOGRACIAS, PHILIP DEOGRACIAS,                          APPELLEES
AND PHILIP DEOGRACIAS D/B/A THE
RAILROAD CAFÉ, LLC

DATE OF JUDGMENT:                03/25/2019
TRIAL JUDGE:                     HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:       PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         JOHN D. SMALLWOOD
                                 WILLIAM C. WALTER
ATTORNEY FOR APPELLEES:          RICHARD C. FITZPATRICK
NATURE OF THE CASE:              CIVIL - CONTRACT
DISPOSITION:                     AFFIRMED IN PART; REVERSED AND
                                 REMANDED IN PART - 05/11/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### BARNES, C.J., FOR THE COURT:

¶1.    Gordon Kleyle filed suit against Myrna and Philip Deogracias individually and/or

d/b/a The Railroad Café Limited Liability Company (the LLC),[1] alleging breach of a lease

agreement and requesting payment of past-due rent.  Arguing that the lease was invalid, the

Deograciases filed a motion to dismiss.  The Pearl River County Circuit Court granted the

motion to dismiss, finding that the lease was void and the Deograciases were month-to-

---

[1]    We refer to the appellees collectively as "the Deograciases."  However, where
pertinent, we will distinguish between the individual parties.

month, at-will tenants. Kleyle appeals the circuit court's decision.

¶2.     Because there was no evidence presented that Philip signed the lease or that Myrna had authority to sign on his behalf, we affirm the court's dismissal as to Philip in an individual capacity. However, finding the lease was valid as to Myrna and the LLC and was of sufficiently definite duration, we conclude that the court's findings were erroneous in this regard. We thereby reverse the court's judgment of dismissal in part and remand for further proceedings. As to the remaining issues raised by Kleyle, we find those are either waived or without merit.

## FACTS AND PROCEDURAL HISTORY

¶3.     Kleyle entered into an oral agreement to lease a building to the Deograciases, who intended to use the building to operate a new restaurant, The Railroad Café. Kleyle contends that the lease was reduced to writing on February 1, 2008, and "[u]nder the terms of the written lease, the Deograciases were to pay $1,850 per month in rent, the lease was to run from February 2008 through February 2010, and the Deograciases could cancel the lease at any time by providing Kleyle with ninety (90) days' written notice." Kleyle states that the Deograciases stopped paying rent as of August 1, 2008. The Deograciases gave oral notice that they were vacating the building either in September 2008 (as alleged by the Deograciases) or on June 23, 2009 (as alleged by Kleyle).

¶4.     On September 20, 2009, Kleyle filed a complaint in the circuit court against the Deograciases, alleging default under the lease agreement. Kleyle also demanded "unpaid

2

rent of $15,500.00" and reimbursement for damages totaling $5,084.92.[2] The complaint was later amended to add The Railroad Café as a defendant.[3] The Deograciases filed a motion to dismiss, claiming they had "no personal liability and/or obligation for the claims made." In its answer, the LLC requested dismissal of the action, arguing that "[t]he Lease Agreement between Kleyle and the Railroad Café was a verbal agreement and therefore on a month to month basis." Although the court initially denied the defendants' motion to dismiss on July 19, 2010, the complaint was subsequently dismissed, and the statute of limitations tolled after the Deograciases filed a notice of bankruptcy on July 28, 2010.

¶5.     On May 18, 2011, Kleyle filed a new complaint in the circuit court against the Deograciases "individually and/or d/b/a" The Railroad Café, again claiming that they had defaulted on the lease agreement. Kleyle sought $24,000 in past-due rent, damages for personal property that he claimed the Deograciases removed from the premises, and the cost of repairs to equipment and appliances.[4] Attached to the complaint was a copy of a different lease agreement (later designated by the court as "Lease 2") between Kleyle and "The

---

[2] The lease agreement attached to both complaints ("Lease 1") bore Kleyle's and Philip Deogracias's signatures, was dated February 1, 2008, and stated that the "Tenants shall pay the monthly rent of $1850 beginning February 1 2008 and ending February 1 2010."

[3] Filings from the Mississippi Secretary of State included in the record indicate that the Deograciases formed The Railroad Café LLC on January 1, 2008, with Myrna listed as the registered agent, and both Myrna and Philip were listed as "owner."

[4] At the subsequent bench trial, Kleyle did not submit evidence of the alleged damages to personal property or the cost of repairs to equipment and appliances.

Railroad Café," dated February 9, 2008, which provided in relevant part: "Tenants shall pay the monthly rent of $1850 beginning February 1, 2008 and ending February __, 2010." The lease was purportedly "signed" by both Myrna and Philip.

¶6.     The LLC answered Kleyle's complaint, asserting that (1) the written lease contained "a fraudulent and forged signature," (2) there was only an oral month-to-month lease, and (3) oral notice of cancellation was provided to Kleyle in September 2008 prior to the restaurant's ceasing operations in October 2008. The answer also stated that, on November 17, 2008, the Deograciases sold The Railroad Café restaurant to Rudy Packard, who continued to operate the restaurant and pay Kleyle rent of $200 per week through June 23, 2009, pursuant to an oral lease with Kleyle.

¶7.     In 2013, the circuit court allowed the Deograciases to add Alabama Great Southern Railroad Company "AGS" as a necessary party. On June 11, 2013, the Deograciases filed an amended answer raising as a defense that Kleyle had violated the anti-assignment/sublease provision contained in the lease between AGS and Kleyle. AGS was subsequently dismissed from the case with prejudice on July 28, 2014.

¶8.     The Deograciases filed a second motion to dismiss, based upon the alleged invalidity of their sublease with Kleyle because AGS had not agreed to the sublease. The circuit court granted the motion and dismissed the complaint; so Kleyle appealed, and the appeal was assigned to this Court. In *Kleyle v. Deogracias*, 195 So. 3d 234 (Miss. Ct. App. 2016) ("*Kleyle I*"), we reversed and remanded for further proceedings, holding that "[b]ecause

4

AGS's lack of consent to the sublease never deprived the Deogracises of use or occupancy of the premises, it [was] not a basis for the Deogracises to avoid their concomitant obligation to pay rent." *Kleyle*, 195 So. 3d at 238 (¶12). However, we made no ruling in *Kleyle I* with regard to the validity of the lease agreement between Kleyle and the Deogracises or their status as tenants under the lease.

¶9. On remand, the case was reassigned from Judge Harrell to Judge Mozingo, who presided over the bench trial on March 20, 2019. At the close of Kleyle's case, counsel for the Deogracises moved for a dismissal, arguing "that the plaintiff has failed to carry its burden and prove his case, and based on that[,] ask[ed] for directed verdict." Finding Lease 2 controlling, the court granted the Deogracises' motion because Lease 2 was "voidable, . . . if not, void on its face," for the following reasons: (1) the lease had "no end date for the contract"; (2) Myrna had "forged her husband's name" on the lease agreement; and (3) "there's no attestation or notary page[; s]o we don't know who signed it." The court subsequently entered a judgment of dismissal on March 25, 2019, finding that (1) there was no valid, enforceable lease; and (2) the Deogracises were month-to-month, at-will tenants, which relieved them of any notice requirement to cancel contained in Lease 2. Kleyle was not awarded any past-due rent or damages. The court denied Kleyle's motion to reconsider.

¶10. Kleyle appeals the circuit court's judgment, alleging the court erred by: (1) granting the motion to dismiss on the basis that the subject lease agreement was not valid; (2) transferring the case from Judge Harrell to Judge Mozingo; and (3) refusing to enter a

judgment for the costs of appeal assessed in *Kleyle I* and by allowing the Deograciases to participate in the trial of this case.[5]

## STANDARD OF REVIEW

¶11.    The Deograciases moved for a directed verdict at trial, which the circuit court granted. At a bench trial, "the proper motion to make at the close of plaintiff's case-in-chief is a motion for involuntary dismissal . . . [;] directed verdicts are reserved only for jury trials." *Ladner v. Stone Cty.*, 938 So. 2d 270, 273 (¶9) (Miss. Ct. App. 2006) (citing M.R.C.P. 41(b), 50(a)).  However, "rather than reversing a trial court's judgment granting a directed verdict due to a procedural error, this Court has considered such appeals under the standard of review for a motion for involuntary dismissal." *Vermillion v. Perkett*, 281 So. 3d 925, 929 (¶11) (Miss. Ct. App. 2019) (citation omitted).

¶12.    When making a determination on a motion for involuntary dismissal pursuant to Mississippi Rule of Civil Procedure 41(b), "the trial court should consider 'the evidence fairly, as distinguished from in the light most favorable to the plaintiff,' and the judge should dismiss the case if it would find for the defendant." *Ladner*, 938 So. 2d at 273 (¶10) (quoting *Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359, 369 (Miss. 1992)).  Upon review, "we will not overturn the decision of [the court] if its findings are supported by substantial evidence unless [the court] abused its discretion, was manifestly wrong, or applied an

---

[5] On May 28, 2019, this appeal was dismissed for failure to pay costs. *See* M.R.A.P 2(a)(2).  However, the Mississippi Supreme Court later reinstated the appeal on June 13, 2019.

erroneous legal standard." *SKL Invs. Inc. v. Hardin*, 170 So. 3d 588, 591 (¶12) (Miss. Ct. App. 2014) (quoting *Jones v. Jones*, 101 So. 3d 731, 732 (¶4) (Miss. Ct. App. 2012)).

**DISCUSSION**

¶13.    We find the second assignment of error raised by Kleyle is waived on appeal. Nothing in the record indicates that Kleyle opposed the transfer of the case from Judge Harrell to Judge Mozingo; Kleyle even moved for a bench trial twice after the case was transferred to Judge Mozingo.

¶14.    Regarding the third assignment of error, it was not until his motion for reconsideration that Kleyle complained that the Deograciases had not paid him the appeal costs assessed in *Kleyle I*—an issue that Kleyle had not raised previously. At the hearing on the motion to reconsider, Kleyle noted to the court that he had not received the costs. The court replied: "Well, you have a remedy and relief to that to collect that money, but it's not with me. I didn't decide the appeal, and you weren't appealing to me. That I can't do for you; although, I do contend that that's what the order says." Denying the motion to reconsider, the circuit court further noted in its order that "those costs appl[ied] to that appeal and not this trial" and that it was not the court's "place . . . to enforce the payment of fees ordered by another court."

¶15.    Mississippi Rule of Appellate Procedure 36(d) provides, "A party who is not aggrieved by the opinion or mandate but who seeks relief as to any other matter involving costs shall seek relief in the trial court." Although the Deograciases acknowledge that

7

"Kleyle is entitled to his judgment under Rule 36," they note that "Kleyle has never requested a judgment for his costs, a cost bill from the clerk, nor served a cost bill on [them]." Thus, because Kleyle has not yet presented any cost bill incurred in pursuing the first appeal, we find this assignment of error lacks merit. We do, however, agree that once Kleyle does present a cost bill from the first appeal, the Deograciases possess no discretion regarding whether to pay the bill; nor does the trial court have discretion whether to follow our mandate in *Kleyle I. See Griner v. Griner*, 282 So. 3d 1243, 1247 (¶13) (Miss. Ct. App. 2019) (noting that the trial court has "no discretion whether to follow a mandate, because 'the execution of the mandate of this Court is purely ministerial'").[6]

¶16.    Kleyle's remaining issue concerns the validity of what the circuit court designated as Lease 2, which was attached to the 2011 complaint.[7] In the judgment of dismissal, the court concluded:

---

[6] Kleyle's argument that the Deograciases should not have been allowed to proceed without having paid the appeal costs assessed in *Kleyle I* was not asserted until his appeal to this Court. "We do not hold trial courts in error on issues not presented to them for consideration." *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1055 (¶18) (Miss. 2016). As such, we will "not entertain arguments made for the first time on appeal[,] as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Davis v. Guido*, 308 So. 3d 874, 882-83 (¶33) (Miss. Ct. App. 2020) (quoting *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005)).

[7] The 2009 complaint was dismissed by the circuit court on August 6, 2010, and was never reinstated. Because the 2011 complaint is controlling, the order of transfer on August 21, 2018, improperly ordered the merger of the 2009 case with the 2011 case. However, this error is not grounds for reversal because the judgment of dismissal is clearly based only on the circuit court's analysis of Lease 2.

> Lease 2 contains two flaws that render the lease void, or at least, unenforceable. First, there is no end date for the contract. It's blank. The second flaw is that Ms. Deogracias admitted she forged Mr. Deogracias' signature on the lease. Neither party presented any evidence that Ms. Deogracias had Mr. Deogracias' authorization to sign on his behalf. Further, there was no notary or attestation page to verify the identity of who signed the lease.

For this reason, the circuit court determined that the Deograciases were month-to-month tenants at will. We find the court's ruling to be in error.

¶17. At trial, Myrna Deogracias admitted that she signed her husband's name to the lease. Nevertheless, Myrna acknowledged that her signature was on the lease, and there is nothing in the record to support that Myrna, an owner and member of The Railroad Café LLC, did not possess the authority to enter into the subject lease individually and on behalf of the LLC.[8] Therefore, we find the court erred in ruling that the lease was invalid as to Myrna and the LLC for this reason. Additionally, we find no authority requiring a lease agreement to be notarized. A lease is a contract, and as this Court has recognized, "[i]t is basic contract law that a contract does not have to be notarized to be valid." *Union Healthcare Inc. v. Morgan*, 750 So. 2d 1268, 1274 (¶32) (Miss. Ct. App. 1999) (citing 17A Am. Jur. 2d Contracts § 16 (1991)).

¶18. We further hold that the court erred in finding that the Deograciases were month-to-month, at-will tenants. The Mississippi Supreme Court has stated:

---

[8] Records from the Secretary of State submitted at trial indicate that when the lease was signed, Myrna and Philip were owners of the LLC.

9

> Before a court may order specific performance of a contract, it must find the contract *reasonably complete and reasonably definite* on material points. A contract is said to enjoy the level of specificity predicate to enforceability[] "if it contains matter which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence."

*Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991) (emphasis added) (quoting *Duke v. Whatley*, 580 So. 2d 1267, 1273-74 (Miss. 1991)); *accord Hunt v. Coker*, 741 So. 2d 1011, 1015 (¶9) (Miss. Ct. App. 1999) (recognizing *Leach*'s holding that a "contract is unenforceable if its material terms are not sufficiently definite"). *See also Simons v. Am. Dry Ginger Ale Co.*, 140 N.E.2d 649, 652 (Mass. 1957) (A contract is enforceable "if, when applied to the transaction and construed in the light of the attending circumstances, the meaning can be ascertained with reasonable certainty." (Citation and internal quotation marks omitted)); *cf. Ross v. Ross*, 172 A.3d 1069, 1077 (N.H. 2017) (finding that because the "duration of the lease [was] neither stated in nor determinable from [the lease] document," it was "insufficiently definite to satisfy the statute of frauds").

¶19.    Viewing the lease agreement as a whole, we find it evident the parties' intent was to enter into a two-year lease. *See Magnolia Const. Co. v. Miss. Gulf S. Engineers Inc.*, 518 So. 2d 1194, 1204 (Miss. 1988) ("[I]n construing a contract, the instrument as a whole will be looked to and its meaning determined for the entire agreement as written in order to ascertain the intentions of the parties from the contract." (Quoting *Mitchell v. Eagle Motor Lines*, 228 Miss. 214, 226, 87 So. 2d 466, 469 (1956))). The pertinent portion of the subject lease agreement provides: "Tenants shall pay the monthly rent of $1850 beginning February 1,

10

2008 and ending February __, 2010." Although the date of the lease term's end was left blank, the only uncertainty is whether the lease was to terminate on February 1 or a date between February 2 and February 28, 2010. We find this ambiguity inadequate to convert the entire lease into a month-to-month tenancy. The lease was certain as to February 1, 2008, until February 1, 2010, and neither party has contended that the lease extended past February 1, 2010. Accordingly, we find that the lease terms were "reasonably definite" as to duration, and the circuit court erred in ruling that the Deograciases were month-to-month tenants.

¶20. We reverse the circuit court's dismissal of Kleyle's complaint and remand for further proceedings consistent with this opinion. In light of our determination that Lease 2 was valid and enforceable, we leave the issue of the lease's notice requirements for cancellation for the court's consideration on remand. The court should also address any damages accrued during the time that The Railroad Café operated without paying rent, as well as any impact Kleyle's alleged subsequent lease with Rudy Packard may have on any amounts owed to him by the Deograciases.

¶21. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD, J.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22. The majority holds that the trial court erred in finding Lease 2 invalid. While this is

true, I am of the opinion that rather than a two-year lease, a month-to-month tenancy was created. Therefore, I respectfully dissent in part.

¶23. Kleyle alleges error concerning the validity of a lease and whether the Deograciases are tenants who should have paid rent under Mississippi law. The only lease at issue is what the circuit court called "Lease 2," which was attached to the 2011 complaint. The 2009 complaint was dismissed by the Pearl River County Circuit Court on August 6, 2010. This complaint was never reinstated. The 2011 complaint is controlling, and the order of transfer on August 21, 2018, improperly ordered the merger of the 2009 case with the 2011 case. This error is not grounds for reversal because the judgment of dismissal is clearly based only on the circuit court's analysis of Lease 2.

¶24. As noted by the circuit court, there are numerous flaws in Lease 2. There is no end date, and the only evidence in the record regarding the lease term is an uncorroborated, self-serving statement by Kleyle that Philip Deogracias approached him about obtaining a two-year lease. The term of the lease is not evident from the face of the document, from application of the canons of contract construction, or through parol evidence. Additionally, there is controversy surrounding Philip Deogracias's allegedly fraudulent signature. It concerns me greatly that The Railroad Café's June 2011 answer alleged as an affirmative defense that Lease 2 contained "a fraudulent and forged signature[,]" yet at trial Myrna Deogracias admitted that she signed her husband's name to the lease. The Deograciases should not be allowed to benefit from fraud that they perpetrated.

12

¶25. Although Philip did not sign the lease, Myrna (an owner and member of The Railroad Café LLC) did. Myrna admitted at trial that she signed the lease, and there is nothing in the record showing that she did not have the authority to enter into the subject lease.[9] Further, there is no requirement under Mississippi law that a lease be notarized, and the circuit court erred in so holding. The facts in this case indicate that the Deograciases were tenants under a valid lease.

¶26. Looking at the lease, outside of a self-serving statement by Kleyle, there was no testimony at trial regarding the purported term of the lease. But it is undisputed that the Deograciases paid rent on a monthly basis beginning in February 2008 through at least August 2008. Kleyle states that he received no rent after August 2008, and Myrna testified that she "think[s]" they paid rent monthly through October 2008 when they ceased operation of The Railroad Café.[10] This suggests a month-to-month tenancy. *See Lay v. S. Lumber Co.*, 118 Miss. 636, 79 So. 822, 824 (1918) (holding that where a rental agreement for $4 a month was indefinite as to duration, the tenancy was from month-to-month); *see also* K.F. Boakle, *Mississippi Landlord and Tenant Law* § 2:2 (2020) (A tenancy for years must have a definite beginning and a definite end date.). I am not satisfied that there is sufficient evidence of the

---

[9] Even if the lease were invalid due to its deficiencies, this would not change the outcome. "Where a lessee enters into possession under an invalid lease and pays a periodical rent, a periodical tenancy is created, as a general rule." *Scruggs v. McGehee*, 110 Miss. 10, 69 So. 1003, 1005 (1915) (citation omitted).

[10] The circuit court took judicial notice at trial that rent was paid through August 2008.

parties' intent to enter into a two-year lease. Lease 2 should be deemed month-to-month.

¶27. The duties the Deograciases as tenants owed to Kleyle regarding payment of rent and notice that they were vacating the property must also be addressed.[11] As we stated in *Kleyle I*, "there is no sound reason that a subtenant should be allowed to enjoy full use and occupancy of the leased premises and then avoid paying rent by claiming the sublease was 'void.'" *Kleyle I*, 195 So. 3d at 238 (¶12) (quoting *Tenet Health Sys. Hosps. Dallas Inc. v. N. Texas Hosp. Physicians Grp.*, 438 S.W. 3d 190, 198 (Tex. Ct. App. 2014)).

¶28. The majority leaves the termination requirements of Lease 2 for the circuit court to address on remand. While I agree with this in theory, cancellation requirements under a two-year lease differ from cancellation of a month-to-month tenancy. Lease 2 is valid, and because a month-to-month tenancy was created, termination requires a one-week, written notice. As determined by the Mississippi Supreme Court in *Williams v. Barlow*, 205 Miss. 449, 458, 38 So. 2d 914, 915 (1949), a month-to-month tenancy can only be terminated by one week's written notice. *See also* Miss. Code Ann. § 89-7-23 (Rev. 2011) (as applied to nonresidential leases, for leases by the month or by the week, one week's written notice is required for termination by the landlord or tenant). The Deograciases gave oral notice either

---

[11] Kleyle maintains that we determined that the Deograciases were tenants in *Kleyle I*. This is not accurate. In *Kleyle I*, we ruled only on the Deograciases' argument that the anti-assignment provision in the lease between AGS and Kleyle provided a defense to the payment of rent. We made no ruling regarding the validity of the lease between Kleyle and the Deograciases or the Deograciases' status under the lease. We remanded the case to the circuit court for further findings regarding the issues raised in the complaint.

in September 2008 or on June 23, 2009, that they were vacating the building.[12]  The statutory notice requirement was not satisfied by the Deograciases' oral notice of termination whether it occurred in September 2008 or in June 2009.  There is insufficient evidence in the record for us to determine exactly when or if notice of termination should be attributed to the parties via constructive notice or some other means or exactly when the Deograciases vacated the premises.  As specified by the majority, the circuit court should address this issue.

¶29.    For the foregoing reasons, I respectfully dissent from the majority opinion regarding the term of Lease 2 and the proper manner of cancellation of the lease.

**McDONALD, J., JOINS THIS OPINION IN PART.**

---

[12] It should be noted that June 23, 2009, was approximately seven months **after** the Deograciases sold the café to Rudy Packard and he allegedly began paying $200 per month to Kleyle.  On remand, this may impact any back rent or damages owed to Kleyle.